Velma P. **MARSH**, by next friend Dorothy **STEADMAN**, Appellant–Petitioner,

v.

**VIGO COUNTY DEPARTMENT OF PUBLIC WELFARE; Indiana Department of Public Welfare, Appellees–Respondents.**

No. 84A01–8912–CV–533.

Court of Appeals of Indiana, First District.

May 14, 1990.

Kimberly Ann Posey, Kenneth J. Falk, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Patricia K. Slater, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees-respondents.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Velma Marsh (Marsh) appeals the trial court's denial of her Petition for Judicial Review of the decision of the Vigo County Department of Public Welfare (DPW) to terminate Marsh's Medical Assistance for the Aged (medicaid) benefits due to excess resources stemming from Marsh's property ownership. We affirm.

## FACTS

Marsh is an elderly nursing home resident who received medicaid assistance. Marsh suffers from chronic organic brain syndrome, arterial-sclerotic cardiovascular disease, and alcoholism, and has been institutionalized since 1984. It is undisputed by the parties that Marsh is, and was at all times relevant to this appeal, mentally confused and disoriented.

On January 30, 1987, the DPW sent a written notice to Marsh explaining that due to a change in regulations her medicaid benefits would be discontinued as of March 1, 1987. The notice indicated that Marsh's benefits were being terminated because Marsh had failed to provide the DPW with an appraisal of certain property she owned which was not exempt under medicaid guidelines. Marsh requested and was granted a hearing on the proposed discontinuance of her benefits.

The property referred to in the March 1 notice was a one-half (½) interest in the residence of Mr. Dudley Marsh. Velma Marsh had resided with Dudley Marsh at his residence in Terre Haute (the Terre Haute property) since 1966 and served as his housekeeper. While Velma took the name of Marsh, the two were not legally married nor did they ever live together as common-law husband and wife. Prior to the time Velma Marsh became incompetent, Dudley Marsh quitclaimed one-half (½) of his interest in the property to Velma. It was apparently Dudley's intention that in the event of his death, the Terre Haute property should pass to Velma.[1] Dudley Marsh continues to reside on this property.

On May 13, 1987, a hearing was conducted on the discontinuance of Marsh's benefits. At this hearing Marsh's representative provided an appraisal of the property. The DPW withdrew its contention that Marsh had failed to cooperate. The appraisal revealed the property's value to be $12,500. The hearing officer then determined that Marsh's share of this asset was one-half (½) its appraised value, or $6,250. Under medicaid regulations, a person's assets cannot exceed $1,500 or the person is deemed ineligible for benefits.[2] The hearing officer thus determined that Marsh was ineligible for benefits due to her one-half (½) interest in Dudley Marsh's residence. The State Board of Public Welfare affirmed the hearing officer's decision on September 4, 1987. Marsh filed a Petition for Judicial Review on October 6, 1987, which was denied by the trial court on September 8, 1989. From this decision, Marsh now appeals.

## ISSUE

Was Marsh's one-half (½) interest in the Terre Haute property available to Marsh for purposes of determining her financial eligibility for medicaid despite the fact that she was in a state of continued mental confusion?

## DISCUSSION AND DECISION

Marsh contends that because of her confused mental state, she is unable to trans-

---

1. Although this may have been Dudley's intent, we note that quit claiming a one-half (½) interest in the property to Velma would not result in her inheriting the entire property upon Dudley's death.

2. 470 IAC 9.1–3–17(a)(1).

fer her one-half (½) share in the Terre Haute property and that, therefore, this asset should not be considered in determining Marsh's financial eligibility for medicaid benefits. Marsh is mistaken.

The financial ceiling for an unmarried individual seeking medicaid benefits is set forth in 470 I.A.C. 9.1–3–17 which reads as follows:

> "(a) An applicant or recipient is ineligible for medical assistance for any month in which the total equity value of all non-exempt resources exceeds the applicable limitation set forth below, on the first day of the month:
>
> (1) $1,500 for the applicant or recipient including the amount determined in (b) below if applicable; or
>
> (2) $2500 for the applicant or recipient and his spouse."

The term "resources" as used in the above cited passage is defined in 470 I.A.C 9.1–3–16 as follows:

> "(a) Definitions. (1) Resources are all the real and personal property owned by the applicant or recipient and his spouse or parent(s). Resources must be available in order to be considered in the eligibility determination. If the individual had the right, authority or ability to liquidate the property, or his share of the property, it is considered an available resource."

Marsh argues that because of her mental condition, she is not able to enter into a sales contract and liquidate her interest in the Terre Haute property. Therefore, according to Marsh, such property is not "available" to her within the meaning of 470 I.A.C. 9.1–3–16. However, Marsh fails to note that under this statute, the term "ability" is simply one term in a disjunctive series, the other pertinent terms being "right" and "authority". An applicant must possess only one such characteristic in relation to his property in order for that property to be considered an available resource.

In the present case, Marsh's mental condition may very well affect her "ability" to transfer the Terre Haute property, however, her "right" to dispose of the property remains intact. While it is true that under IND. CODE § 32–1–2–2 and 29–1–18–41, a mentally incompetent person may not alienate real property or any interest therein, the laws of this state provide procedures by which the rights and interests of a mentally incompetent individual may be protected and pursued. *See* IND. CODE § 29–1–18–1 *et seq.* Once a person has been adjudged mentally incompetent, a guardian may be appointed. I.C. 29–1–18–6, 20. The guardian is required to manage the estate in the best interests of the mentally incompetent individual, I.C. 29–1–18–28, and may transfer the incompetent individual's property for the purpose of providing for the incompetent individual's care. I.C. 29–1–18–43(a). We hold, therefore, that while Marsh is unable to transfer her one-half (½) interest in the Terre Haute property on her own, procedures are available by which Marsh's property may be disposed of in order to provide for her well-being.[3]

IND. CODE § 4–21.5–5–14 provides this court's standard of review for cases involving administrative agency determinations. In our opinion the action of the DPW in the present case was not arbitrary or capricious, did not constitute an abuse of discretion, and was not contrary to law. Indeed, as pointed out by the DPW, any other conclusion would lead to a ridiculous situation in which an elderly, competent individual could be denied medicaid benefits, while an elderly, incompetent individual is granted medicaid benefits despite the fact that these individuals' assets are identical. Each individual's assets would be transferable, though by different procedures, yet only the incompetent individual would be allowed to maintain ownership while receiving medicaid benefits. As stated previously, such a result is patently ridiculous. Therefore we affirm the trial court's denial of Marsh's Petition for Judicial Review and hold that the DPW did not err in determining that Marsh's one-half (½) interest in the

---

**3.** We note that I.C. 29–1–18–1 *et seq.* was repealed as of 1989. For provisions relating to guardianships, and other protective proceedings now in effect, *see* I.C. 29–3–1–1 *et seq.*

Terre Haute property was an available resource making Marsh ineligible for medicaid benefits.

Affirmed.

GARRARD, J., concurs.

BAKER, J., concurs with separate opinion in which RATLIFF, C.J., concurs.

BAKER, Judge, concurring.

I concur in the result reached by my colleagues because to decide otherwise would, as they have noted, lead to an unfair and anomalous result that incompetents would receive medicaid benefits while competent individuals of a similar financial station would not. I nonetheless feel compelled to write separately to express my frustration with the litigants' processing of this cause.

Marsh's assets are, of course, legally available to her. It is equally obvious that they are completely unavailable to her as a practical matter.[1] As an incompetent, she is not able to liquidate her interest in the realty concerned. IND. CODE 32-1-2-2.

As the State has correctly noted, the appointment of a guardian to transfer and liquidate Marsh's assets would solve the problem and ensure Marsh's continued medicaid eligibility. Since she is in reality unable to speak for herself, it is unfathomable to me why none of the parties concerned have taken action under IND. CODE 29-3-3-1 et seq.; IND. CODE 29-3-4-1 et seq.; or IND. CODE 29-3-5-1 et seq.[2] In their reply brief, Marsh's counsel state that "[t]here is no one who has stepped forward and no one exists who is willing to become Marsh's guardian." *Appellant's Reply Brief* at 2. Since Marsh's counsel have demonstrated familiarity with the probate code sections cited, either they, the DPW, or Marsh's next friend in this

action, or any other person could have petitioned the trial court to take appropriate action. In this age of skyrocketing health care costs, it is somewhat shameful that an impoverished, elderly, incompetent woman will be denied medicaid benefits for the want of the filing and processing of a simple petition.

We are required to decide the cases as they come before us—this one should not have come before us.

---

1. It is worth noting that unless Dudley Marsh buys Marsh's interest, thus regaining full ownership of the property, the chances that the one-half quitclaim interest in a piece of property valued at $12,500 would fetch $6,250 are, at best, slim indeed.

2. The predecessor to these articles, IND. CODE 29-1-18-1 et seq., did not provide for a single

transaction type of guardianship needed here, and would have required an adjudication of Marsh's capacity before a guardian could be appointed. The new code sections, which would have provided relief and may yet, went into effect on July 1, 1988, some 14 months before the trial court denied review.