MINA ROSS, ADMINISTRATRIX (ESTATE OF MARY GUTTMAN) *v.* PATRICIA A. GIARDI, ACTING COMMISSIONER OF SOCIAL SERVICES (15342)

Borden, Berdon, Norcott, Katz and Palmer, Js.

---

Argued March 22—officially released July 2, 1996

*Hugh Barber*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellant (defendant).

*Lea Nordlicht Shedd*, for the appellee (plaintiff).

BORDEN, J. The dispositive issue in this administrative appeal is whether the department of social services is required to grant retroactive medicaid benefits to the plaintiff for medical expenses incurred while her resources exceeded the statutory limit if, during the months for which retroactive benefits are sought, her incurred medical expenses exceeded her excess resources. The defendant, Patricia A. Giardi, acting commissioner of the department of social services (department), appeals from the judgment of the trial

court, which reversed the decision of the fair hearing officer of the department. The hearing officer had concluded that the plaintiff, Mary Guttman,[1] was not entitled to medicaid benefits for medical expenses incurred during months in which her resources exceeded the standards established by the state. The trial court reversed the decision of the hearing officer, in reliance upon the decision of this court in *Matarazzo* v. *Rowe*, 225 Conn. 314, 326–27, 623 A.2d 470 (1993), in which we held that if the state's medicaid plan in effect on January 1, 1972 (1972 plan), provided for "resource spend down," the state is required to continue to apply that methodology in its medicaid eligibility determinations. We reverse the judgment of the trial court.

The following facts are undisputed. In September, 1993, the plaintiff applied to the department for medicaid benefits. She sought financial assistance for medical expenses incurred while she was a nursing home resident. At the time of the plaintiff's application, she possessed resources in excess of the state's limit of $1600. See General Statutes §§ 17b-80 and 17b-264. By the end of September, the plaintiff had applied the excess resources to her incurred medical expenses. The defendant granted benefits to the plaintiff commencing September, 1993. The defendant denied retroactive eligibility for the three months prior to September, 1993,[2] however, because the plaintiff's resources during those months exceeded the applicable limit.[3]

---

[1] In the interests of clarity and convenience, we refer to the decedent, Mary Guttman, as the plaintiff. This action has been brought on behalf of her estate by the named plaintiff, Mina Ross, acting in her capacity as administratrix of the estate.

[2] Section 17-3f-1 of the Regulations of Connecticut State Agencies, as permitted by federal regulations codified at 42 C.F.R. § 435.914, allows benefits to be granted retroactively to the third month prior to the month of application if the applicant satisfies all conditions of eligibility during each of those months. See Dept. of Income Maintenance, Uniform Policy Manual (1989) § 1560.10.

[3] The plaintiff claims that in June, 1993, she owned resources worth $14,930.79 and had incurred medical expenses of $21,230. In July, 1993,

The plaintiff contested the defendant's denial of retroactive eligibility in an administrative hearing. The plaintiff argued that the state's 1972 plan required the use of a "resource spend down" methodology, which would allow an applicant whose incurred medical expenses exceeded her excess resources to establish retroactive eligibility for benefits by spending excess resources down to the applicable limit. Consequently, the plaintiff argued, this court's decision in *Matarazzo* required the defendant to continue to employ that methodology and, specifically, to apply it to the plaintiff's application for benefits. As a result, the plaintiff argued, she should be granted retroactive benefits because she had applied her excess resources to her outstanding medical expenses as permitted by resource spend down.

The fair hearing officer upheld the denial of retroactive benefits. The plaintiff appealed to the Superior Court pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. The trial court reversed the decision of the hearing officer, holding that this court's decision in *Matarazzo* required the defendant to award retroactive benefits if application of resource spend down would render the plaintiff eligible. The trial court remanded the case to the hearing officer for fact-finding concerning the amount of the medical expenses incurred in the three months prior to the application for benefits. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

I

The plaintiff claims that the defendant improperly refused to apply resource spend down to her application

she claims that her resources totaled $15,604.69 and her incurred medical expenses totaled $27,120. In August, 1993, the plaintiff claims that her resources totaled $14,405.65 and her incurred medical expenses totaled $33,010. Thus, the plaintiff claims that her incurred medical expenses exceeded her excess resources in each of these three months.

for benefits and thereby improperly denied her medicaid benefits for the three months preceding her application. The plaintiff argues that federal law requires the defendant to apply resource spend down because that methodology was required by the state's 1972 plan. The plaintiff relies upon the decision of this court in *Matarazzo* v. *Rowe*, supra, 225 Conn. 326–27, in which we held that the defendant is required to allow resource spend down if the 1972 plan required its application.

The defendant argues that we erroneously concluded in *Matarazzo* that federal law requires the defendant to continue to apply resource spend down if it was required by the 1972 plan. The defendant concedes that the 1972 plan did provide for some form of resource spend down, but argues that federal law does not require the defendant to continue to apply this methodology. The defendant asks this court to reconsider our contrary determination in *Matarazzo*.

To resolve the plaintiff's claim and the defendant's challenge to our prior decision, we are required to wade once again into the virtually impenetrable "Serbonian bog" of federal and state laws governing the medicaid system.[4] Id., 318 and n.3.

A

"Stare decisis gives stability and continuity to our case law. This court, however, has recognized many times that there are exceptions to the rule of stare decisis. . . . A court, when once convinced that it is in error, is not compelled to follow precedent. . . . If,

---

[4] "The relevant statutory scheme has also been described, by Judge Henry J. Friendly, as 'almost unintelligible to the uninitiated.' *Friedman* v. *Berger*, 547 F.2d 724, 727 n.7 (2d Cir. 1976), cert. denied, 430 U.S. 984, 97 S. Ct. 1681, 52 L. Ed. 2d 378 (1977); see also *Friedman* v. *Berger*, 409 F. Sup. 1225, 1225–26 (S.D.N.Y. 1976) (describing statutory scheme as 'aggravated assault on the English language, resistant to attempts to understand it')." *Matarazzo* v. *Rowe*, supra, 225 Conn. 318 n.4.

however, stare decisis is to continue to serve the cause of stability and certainty in the law—a condition indispensable to any well-ordered system of jurisprudence—a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . This is especially true when the precedent involved concerns the interpretation or construction of a statute. (Citations omitted.) *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 62, 111 A.2d 4 (1955); see *Kluttz* v. *Howard,* 228 Conn. 401, 406, 636 A.2d 816 (1994); *White* v. *Burns,* 213 Conn. 307, 335–36, 567 A.2d 1195 (1990)." (Internal quotation marks omitted.) *General Electric Employees Federal Credit Union* v. *Zakrzewski,* 235 Conn. 741, 744, 670 A.2d 274 (1996). We now review *Matarazzo* and the federal medicaid statutory scheme to determine whether cogent reasons and inescapable logic require us to modify or reverse that decision, as urged by the defendant.

In *Matarazzo,* we provided the following review of the history of the medicaid program. "The medicaid program, established in 1965 as Title XIX of the Social Security Act, and codified at 42 U.S.C. § 1396 et seq., provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons. *Harris* v. *McRae,* 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784, reh. denied, 448 U.S. 917, 101 S. Ct. 39, 65 L. Ed. 2d 1180 (1980); 42 U.S.C. § 1396 et seq. Although states participate voluntarily, a state electing to participate must develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . . 42 U.S.C. § 1396a (a) (17). *Clark* v. *Commissioner of Income Maintenance,* 209 Conn. 390, 394, 551 A.2d 729 (1988). Connecticut has elected to participate in the medicaid program and has assigned to the depart-

ment the task of administering the program. General Statutes § 17-134a et seq.

"As originally enacted, [the] Medicaid [Act] required participating States to provide medical assistance to categorically needy individuals who received cash payments under one of four welfare programs established elsewhere in the Act. . . . The categorically needy were persons whom Congress considered especially deserving of public assistance because of family circumstances, age, or disability. States, if they wished, were permitted to offer assistance also to the medically needy—persons lacking the ability to pay for medical expenses, but with incomes [or resources] too large to qualify for categorical assistance. *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 37, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981).

"Since its enactment, the Social Security Act has undergone substantial revisions. In 1972, Congress replaced three of the four categorical assistance programs with a new program called Supplemental Security Income for the Aged, Blind and Disabled (SSI), 42 U.S.C. § 1381 et seq. . . . Under SSI, the Federal Government displaced the States by assuming responsibility for both funding payments and setting standards of need. In some States the number of individuals eligible for SSI assistance was significantly larger than the number eligible under the earlier, state-run categorical need programs.

"The expansion of general welfare accomplished by SSI portended increased Medicaid obligations for some States because Congress retained the requirement that all recipients of categorical welfare assistance—now SSI—were entitled to Medicaid. Congress feared that these States would withdraw from the cooperative Medicaid program rather than expand their Medicaid coverage in a manner commensurate with the expansion of

categorical assistance. [I]n order not to impose a substantial fiscal burden on these States or discourage them from participating . . . Congress offered what has become known as the § 209 (b) option.[5] Under [§ 209 (b)], States could elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972. States thus became either SSI States or § 209 (b) States depending on the coverage that they afforded. . . . *Schweiker* v. *Gray Panthers*, [supra, 453 U.S. 38–39]." (Internal quotation marks omitted.) *Matarazzo* v. *Rowe*, supra, 225 Conn. 319–21.

Connecticut has elected the § 209 (b) option. Id., 322; *Clark* v. *Commissioner of Income Maintenance*, supra, 209 Conn. 394–95 n.4; *Gnutti* v. *Heintz*, 206 Conn. 628, 633, 539 A.2d 118 (1988). As a § 209 (b) state, Connecticut may choose to apply more restrictive eligibility criteria[6] to applicants for medicaid benefits than the federal

---

[5] Section 209 (b) of the Social Security Act, as codified at 42 U.S.C. § 1396a (f), provides in relevant part: "Notwithstanding any other provision of this subchapter . . . no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b (f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law regardless of whether such expenses are reimbursed under another public program of the State or political subdivision thereof) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972. . . ."

[6] We treat the terms "requirements" and "criteria" as synonymous. We recognize a distinction between the terms "standard" and "methodology." These terms are not defined by statute or regulation but they are employed

government applies to applicants for SSI benefits. The state, however, may not apply eligibility criteria that are more restrictive than the criteria contained in its medicaid plan in effect on January 1, 1972. 42 C.F.R. § 435.121 (1992); *Matarazzo* v. *Rowe*, supra, 225 Conn. 321. In *Matarazzo*, we further held that the state must apply the eligibility criteria contained in the 1972 plan unless the criteria are prohibited by the SSI program, even if the use of the criteria results in medicaid eligibility for an individual who is not eligible for SSI benefits.[7] *Matarazzo* v. *Rowe*, supra, 325–27.

After careful reconsideration of this issue, including a review of the relevant statutory and regulatory provisions and recent precedent, we conclude that, under its categorically needy program,[8] the state is not required to provide medicaid benefits to individuals who would have been eligible under the 1972 plan unless those individuals satisfy the existing SSI eligibility criteria as applied by the federal government in its determination of SSI eligibility. Specifically, we conclude that the state is not required to apply resource spend down to the plaintiff's application for medicaid benefits unless the plaintiff (1) satisfies the SSI

by the statutes, regulations and case law to refer to distinct concepts related to eligibility determinations. A "standard" is a discrete amount against which an individual's income or resources are measured. See *Morris* v. *Morrow*, 783 F.2d 454, 462 (4th Cir. 1986). A "methodology" is a method of calculating the amount of the individual's income or resources that are to be measured against the standard. See id.

[7] We recognize that states are statutorily required to provide medicaid benefits only to those individuals who are receiving SSI benefits and those who are deemed to be SSI recipients, and not to individuals who merely would be eligible for SSI benefits if they sought to receive them. See 42 U.S.C. § 1396a (a) (10) (A); 42 C.F.R. § 435.120. Although we frequently refer to SSI eligibility as a touchstone for the state's medicaid obligations, we do not intend to imply that the state's burden to provide medicaid benefits is broader than that imposed by federal law.

[8] We limit our analysis in part I of this opinion to the state's obligations under its mandatory categorically needy program. We discuss the state's obligations under its voluntary medically needy program in part II.

resources limit as it is applied by the SSI program, namely, without application of resource spend down, and (2) would have been eligible for resource spend down under the 1972 plan. In this case, the plaintiff cannot satisfy the applicable SSI resources limit without the application of resource spend down and, therefore, the state is not required to apply resource spend down in order to allow her to establish her eligibility for medicaid benefits.

As we stated in *Matarazzo* v. *Rowe*, supra, 225 Conn. 325, "we agree with the defendant that § 209 (b) does not authorize the state to create an alternative basis for eligibility for medicaid inconsistent with federal law, but merely permits the state to restrict the eligibility of persons who would otherwise qualify for such benefits under SSI standards. *Roloff* v. *Sullivan*, 975 F.2d 333, 340 (7th Cir. 1992); *Savage* v. *Toan*, 795 F.2d 643, 645–46 (8th Cir. 1986); *Morris* v. *Morrow*, 783 F.2d 454, 459–60 (4th Cir. 1986); *Foley* v. *Suter*, [1989-1 Transfer Binder] Medicare and Medicaid Guide (CCH), ¶37,695, pp. 19,700, 19,704 (N.D. Ill. 1988). This principle is incorporated into the federal medicaid regulations at 42 C.F.R. § 435.121 (1991). Consequently, § 209 (b) does not confer authority upon states to create less restrictive eligibility standards than exist nationally for SSI. *Morris* v. *Morrow*, supra, 459."

The plaintiff argues, and *Matarazzo* effectively held, that although the § 209 (b) option reduced the states' obligation to provide medical assistance to the categorically needy, it also imposed on a § 209 (b) state an obligation that an SSI state does not have—to provide benefits to those who do not qualify for SSI but who had been eligible under the 1972 plan. We now conclude that § 209 (b) was not intended to have this effect. To conclude otherwise would require us to accept the proposition that the purpose of § 209 (b) was not merely to protect the state from the expanded burden of provid-

ing benefits to the categorically needy, but also to force the state to continue to provide benefits to the exact class of individuals to whom it provided benefits in 1972, regardless of whether those who would have been eligible under the 1972 plan are among those whom the federal government now considers to be the most needy of medical assistance—the categorically needy.

We do not agree, however, that the federal government intended to freeze in time the class of individuals to whom the state must provide medicaid benefits. Moreover, we do not agree that § 209 (b) was intended to have the effect of placing an additional burden on the state not otherwise imposed on it by the other provisions of the medicaid statutes. Rather, we conclude that the statutory language, legislative history, federal regulations and recent precedent all indicate that the sole purpose of § 209 (b) is to relieve the states of the burden placed upon them by the federal government's expansion of cash assistance eligibility, by allowing states to eliminate individuals from the pool of applicants to whom they are otherwise required to provide benefits by applying more restrictive eligibility criteria than applied by the SSI program.

First, we examine the statutory language. Section 209 (b), as codified at 42 U.S.C. § 1396a (f), provides that "[n]otwithstanding any other provision of this subchapter . . . no State . . . shall be required to provide medical assistance to any aged, blind, or disabled individual . . . for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month . . . ." By its plain language, the statute establishes an exception to obligations placed upon the state by other statutory provisions. *Roloff* v. *Sullivan*, supra, 975 F.2d 336, 340; *Morris* v. *Morrow*, supra, 783 F.2d

459. The statute provides that other statutory provisions will not create an obligation on the state unless the state would have been required to provide medical assistance under its 1972 plan. Thus, the statute's language presumes an existing obligation from which the state may be relieved unless the 1972 plan provides otherwise.

The legislative history of the statute also supports this conclusion. The report issued by the House of Representatives Ways and Means Committee provides: "Under [the] present law, States are required to cover under medicaid all people eligible for cash assistance payments. If this provision were carried over into the new assistance programs, many thousands of additional people, the great majority of whom would be people made newly eligible for assistance to the aged, blind, and disabled, would be required to be covered under medicaid. In view of the serious financial and other problems of many State medicaid programs, your committee decided not to require the States to cover the newly eligible but rather leave the decision up to each individual State. Your committee's bill would, therefore, provide that despite any other requirements of Title XIX, no State shall be required to provide medicaid coverage to any individual or family member in any month where such person would not have been eligible for such assistance under the State plan in effect on January 1, 197[2]." H.R. Rep. No. 231, 92d Cong., 2d Sess. (1972), reprinted in 1972 U.S.C.C.A.N. 4989, 5183. Similarly, the report issued by the Senate Finance Committee stated that "[u]nder present law, the States are required to cover all cash assistance recipients under the medicaid program. The committee bill, like the House-passed bill, would exempt from this requirement persons who are eligible for Supplemental Security Income but would not have been eligible for assistance under the State welfare programs for the aged, blind,

and disabled as they were in effect prior to the initiation of this new program." S. Rep. No. 1230, 92d Cong., 2d Sess. 394 (1972).

"These explanations demonstrate that under the § 209 (b) option states were required to cover only SSI recipients who also were eligible under the criteria used under the state's January 1, 1972 state plan. The sole purpose of § 209 (b) was to protect states from the fiscal burden of the broader SSI standards enacted in 1972." *Morris* v. *Morrow*, supra, 783 F.2d 460; accord *Savage* v. *Toan*, supra, 795 F.2d 645–46.

The federal regulations governing the administration of the medicaid statutes further lead us to the conclusion that § 209 (b) merely relieves the states of the obligation to provide medical assistance to the categorically needy. At the time of the plaintiff's application, the federal regulation governing the § 209 (b) option, 42 C.F.R. § 435.121 (1992), provided that "[t]he agency may use Medicaid eligibility requirements for the aged, blind, or disabled that are more restrictive than the eligibility requirements for SSI. . . . If an agency uses more restrictive requirements under this section . . . [e]ach requirement may be no more restrictive than that in effect under the State's Medicaid plan on January 1, 1972, and no more liberal than that applied under SSI . . . ."

The language of this regulation emphasizes the state's ability to apply more restrictive eligibility criteria than the SSI program. The regulation does not indicate that the state applying the more restrictive criteria is obligated to apply criteria in the 1972 plan that is not more restrictive, i.e., that would result in medicaid eligibility for individuals not eligible for SSI. In fact, the section of the regulation that describes the state's duty to apply requirements that are no more restrictive than the 1972 plan also states that the requirements applied may be

"no more liberal than that applied under SSI." 42 C.F.R. § 435.121 (c) (1) (1992).

The same regulation, as amended effective August 18, 1994, strongly supports the conclusion that states are not required to apply criteria in their 1972 plans that would render eligible for medicaid those ineligible for SSI. The regulation now provides that "the agency may elect to apply more restrictive eligibility requirements to the aged, blind, and disabled that are more restrictive than those of the SSI program. The more restrictive requirements may be no more restrictive than those requirements contained in the State's Medicaid plan in effect on January 1, 1972. If any of the State's 1972 Medicaid plan requirements were more liberal than [those] of the SSI program, the State must use the SSI requirement instead of the more liberal requirements, except to the extent the State elects to use more liberal criteria under § 435.601." 42 C.F.R. § 435.121 (a) (2) (1995).

This amended regulation, which was not effective when we decided *Matarazzo*, clarifies that states are not required by § 209 (b) to apply requirements that are more liberal than the SSI program merely because those requirements are contained in the state's 1972 plan. States may elect to apply more liberal criteria pursuant to separate statutory and regulatory provisions; 42 U.S.C. § 1396a (r) (2); 42 C.F.R. § 435.601; but they are not required to do so if they have elected the § 209 (b) option.

Moreover, the federal agency responsible for the administration of the social security program, the Health Care Financing Administration, also has adopted this interpretation of § 209 (b). The agency has stated that the § 209 (b) option "acts as a shield against other provisions of the Medicaid statute which would otherwise compel States to cover any aged, blind, or disabled

individual who would not have been eligible under the State's requirements in effect on January 1, 1972. It is not a source of affirmative authority to cover other individuals." 58 Fed. Reg. 4908, 4912 (1993). The agency interprets the statute to require states to provide benefits only to those SSI recipients who satisfy the states' more restrictive criteria. Id., 4910. "In passing section [209 (b)] of the Act, the Congress indicated that it did not intend to require States to broaden Medicaid coverage beyond SSI . . . recipients, but to permit States to restrict coverage if they chose to do so." Id., 4910–11.

The agency's interpretation of the statute is entitled to substantial deference. *Sullivan* v. *Everhart*, 494 U.S. 83, 89, 110 S. Ct. 960, 108 L. Ed. 2d 72 (1990); *Connecticut Dept. of Income Maintenance* v. *Heckler*, 471 U.S. 524, 532, 105 S. Ct. 2210, 85 L. Ed. 2d 577 (1985); *Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–45, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Our deference is particularly warranted in this case, in which we are required to interpret a statutory scheme that "is among the most intricate ever drafted by Congress." *Schweiker* v. *Gray Panthers*, supra, 453 U.S. 43. "In a statutory area as complicated as this one, the administrative authorities are far more able than this Court to determine congressional intent in the light of experience in the field." *Lukhard* v. *Reed*, 481 U.S. 368, 383, 107 S. Ct. 1807, 95 L. Ed. 2d 328 (1987) (Blackmun, J., concurring); *Mowbray* v. *Kozlowski*, 914 F.2d 593, 598–99 (4th Cir. 1990).

For these reasons, we conclude that § 209 (b) serves to relieve states of an existing obligation to provide medicaid benefits to the categorically needy. See *Roloff* v. *Sullivan*, supra, 975 F.2d 340–41; *Savage* v. *Toan*, supra, 795 F.2d 645; *Morris* v. *Morrow*, supra, 783 F.2d 459–61. If the individual does not meet the SSI eligibility criteria, then the state is not required to provide benefits and therefore has no obligation from which to be

relieved by operation of § 209 (b). We conclude that a requirement from the state's 1972 plan is more liberal than the SSI program if its application would result in medicaid eligibility for an individual who is not eligible for SSI benefits. Thus, we ask not whether the requirement is prohibited by the SSI program but whether it is applied by that program and, if it is not, whether its application by the state would render an individual eligible for medicaid benefits who would not be eligible for SSI benefits.[9] If it would render such an individual

---

[9] In *Matarazzo*, we relied upon three federal cases for the proposition that a § 209 (b) state must not apply eligibility requirements that are more restrictive than those applied by the 1972 plan unless federal law prohibits application of the 1972 requirement. *Matarazzo* v. *Rowe*, supra, 225 Conn. 326 n.11, 330–31 n.16. One of those cases, *Indiana Dept. of Public Welfare* v. *Payne*, 592 N.E.2d 714 (Ind. App. 1992), was vacated by the Indiana Supreme Court subsequent to our decision in *Matarazzo*, based on the same reasoning we apply today. See *Indiana Dept. of Public Welfare* v. *Payne*, 622 N.E.2d 461 (Ind. 1993). The other two cases, *Foley* v. *Suter*, [1989-1 Transfer Binder] Medicare and Medicaid Guide (CCH), ¶37,695, pp. 19,700, 19,704 (N.D. Ill. 1988), and *Brogan* v. *Miller*, 537 F. Sup. 139, 144 n.12 (N.D. Ill. 1982), are both United States District Court cases from Illinois, and are governed by the subsequent decision of the Seventh Circuit Court of Appeals in *Roloff* v. *Sullivan*, supra, 975 F.2d 340–41, in which the Court of Appeals concluded, based on its interpretation of the medicaid statutes, that a state's obligation to provide benefits to an applicant who would have been eligible under the 1972 plan does not arise unless that applicant is eligible for SSI benefits.

In *Matarazzo*, we distinguished *Roloff* by noting that the plaintiff in *Roloff* sought benefits under Indiana's categorically needy program, unlike the plaintiff in *Matarazzo* (and the plaintiff in the present case), who sought benefits under the state's medically needy program. *Matarazzo* v. *Rowe*, supra, 225 Conn. 326 n.11. We concluded that this difference was significant in part because of the amendments made to the medicaid statutes by the Medicaid Catastrophic Coverage Act of 1988 (MCCA), Pub. L. No. 100-360, § 303 (e) (5), 102 Stat. 683, 763 (1988), as amended by Pub. L. No. 100-485, § 608 (d), 102 Stat. 2343, 2418 (1988), codified at 42 U.S.C. § 1396a (r) (2), which allowed states to adopt resource methodologies in their medically needy programs that are more liberal than the methodologies used in the SSI program. *Matarazzo* v. *Rowe*, supra, 326 n.11. The significance of this fact rested solely, however, upon our conclusion in that case, which we now reject, that "[i]f not otherwise *prohibited* by federal law, a § 209 (b) state may not adopt eligibility requirements that are more restrictive than those that the state applied on January 1, 1972, under the state plan."

eligible for medicaid benefits, then the requirement would be more liberal than the SSI requirements and the state would not be required to apply it despite the fact that the requirement is an element of the 1972 plan.[10]

We do not hold, however, that the state is never required to apply resource spend down in its medicaid eligibility determinations. Such an absolute rule would create the anomalous situation in which the state would be permitted to deny medicaid benefits to an individual who is receiving SSI benefits and who would have been eligible for medicaid benefits under the state's 1972 plan. For example, an unmarried SSI recipient who has resources worth $1700 satisfies the current SSI standard, which allows the applicant to have resources worth no more than $2000. 42 U.S.C. § 1382 (a) (3) (B); 20 C.F.R. § 416.1205 (c). That individual would not, however, satisfy the current state medicaid standard allowing the applicant to have resources worth no more than $1600. General Statutes §§ 17b-80 and 17b-264. If we were to hold that the state is never required to apply resource spend down, then the state could deny benefits

(Emphasis in original.) Id., 330–31 n.16. We now conclude that the MCCA amendments do not support the argument that a state must apply criteria of the 1972 plan that are more liberal than the SSI program. Rather, the MCCA amendments clarify that a § 209 (b) state is permitted to apply more liberal criteria than the SSI program if the state elects to do so. The state is required to apply the criteria of the 1972 plan, or criteria that is no more restrictive than that criteria, only if the applicant first satisfies the criteria of the SSI program.

[10] The plaintiff argues that an examination of whether resource spend down is employed in the SSI program is not productive because resource spend down is not a methodology that would be applied logically for a cash assistance program. Whether this is true, we conclude that it is irrelevant. Section 209 (b) allows states to avoid an obligation. If the obligation does not exist, i.e., if the medicaid applicant is not an SSI recipient, then § 209 (b)'s mechanism for relieving the obligation does not operate and the state is not bound by § 209 (b)'s prohibition on criteria more restrictive than the state's 1972 plan. Unless the applicant qualifies for SSI, there is no § 209 (b) analysis required. Compare, however, our discussion in part II of this opinion of the state's obligations under its medically needy program.

to this applicant without further analysis. Such a rule, however, could result in the state denying benefits to an applicant who would have been eligible under the 1972 plan. In this hypothetical case, if the applicant's incurred medical expenses exceed his excess resources, then he may have been eligible for benefits under the 1972 plan, which permitted the application of resource spend down in some circumstances.[11]

To allow the state to deny benefits to this hypothetical applicant, we conclude, would violate § 209 (b), which allows the state to avoid its obligation to provide medicaid benefits to SSI recipients "unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month . . . ." 42 U.S.C. § 1396a (f). We hold, therefore, that the state may not deny medicaid benefits to one who is receiving SSI benefits, and who would also have been eligible for benefits under the state's 1972 plan. To comply with this rule, a state may be required to apply resource spend down, as required by the 1972 plan, in order to render eligible for benefits such an SSI recipient who does not satisfy the state's current resource eligibility limits but who would satisfy the resource criteria of the 1972 plan.[12]

---

[11] We decline to undertake an analysis of the resource spend down provision of the 1972 plan because such an analysis is not necessary to our resolution of the issue presented.

[12] We also decline to resolve the defendant's claim that the plaintiff should not be awarded benefits even if the state were required to apply resource spend down because the plaintiff does not satisfy other eligibility criteria contained in the 1972 plan. We note that the state is not required to apply the criteria of the 1972 plan; it simply must apply criteria that are no more restrictive than the criteria of the 1972 plan. The state may choose to adopt criteria that are less restrictive than the 1972 plan, to the extent that federal law permits. The defendant argues that, if an applicant challenges the denial of medicaid eligibility on the basis that the agency's action is more restrictive than permitted by the 1972 plan, that applicant should be required to demonstrate that he or she would have been eligible under every category of

Recently, the Indiana Supreme Court reached the same conclusion we reach today concerning the state's obligations to provide medicaid benefits to the categorically needy under § 209 (b). In *Indiana Dept. of Public Welfare* v. *Payne*, 622 N.E.2d 461, 468 (Ind. 1993), which was decided after our opinion in *Matarazzo*, the court held that the resource spend down provision of Indiana's 1972 plan applies to an applicant only after that applicant has satisfied the "SSI eligibility requirements."[13] That court concluded, as we do in the present case, that "SSI eligibility is a threshold requirement to participation in [the state's] Medicaid program."[14] Id.

The Indiana Supreme Court relied upon the decision of the Seventh Circuit Court of Appeals in *Roloff* v. *Sullivan*, supra, 975 F.2d 340, in which the federal court rejected the plaintiffs' claim that Indiana, a § 209 (b) state, should have applied resource spend down to their applications under the state's categorically needy program. The Court of Appeals held, as we do today, that § 209 (b) serves solely as an exception to the state's obligation to provide benefits to the categorically needy. Id. "Section 209 (b), an exemption, cannot reasonably be read to be a means for expanding, rather than restricting, the class of applicants eligible for Medicaid." Id.

Thus, the court in *Roloff* concluded, the state is bound by the duty created by § 209 (b) to provide benefits to an applicant who would have been eligible under the

requirements contained in the 1972 plan, and thereby lose the benefit of any less restrictive criteria that may have been adopted by the state. Because our resolution of this case does not require us to consider this claim, we leave the resolution of this question to another day.

[13] Although this language of the court in *Payne* might suggest that the rule also applies to one who is not receiving SSI benefits but would be eligible therefor, we note that the relevant statutory language makes clear that the state's obligation to the categorically needy extends only to those who are receiving SSI benefits. See footnote 7.

[14] Indiana has not elected to provide benefits to the medically needy.

1972 plan only if the applicant is categorically needy, i.e., eligible for SSI benefits. Id. "The exception embodied in Section 209 (b) works, we believe, in the following manner:

"(1) Does the 'otherwise applicable law' apply, i.e., is the applicant categorically needy at the time of application? If no, then the applicant is not entitled to Medicaid coverage (unless she is medically needy and lives in a medically needy state). If yes, continue to the next step.

"(2) Does the exception apply, i.e., even if the applicant is categorically needy, would the applicant have been entitled to benefits under the January 1, 1972 rules? If no, then the applicant is not entitled to Medicaid coverage. If yes, the applicant is entitled to Medicaid coverage." Id., 340–41.

In *Roloff*, the plaintiffs could not demonstrate that they were entitled to receive SSI benefits for the months in which they were denied medicaid benefits. The court therefore rejected their claim for benefits. Id., 341. Noting that "the status of Indiana's law in 1972 is unclear," the court declined to resolve "the claims of persons (if any) who would be eligible both for SSI benefits under current federal standards and for Medicaid benefits under the rules in force in Indiana at the beginning of 1972, but to whom Indiana has denied Medicaid eligibility." Id., 341–42.

The Indiana Supreme Court, in *Payne*, relied upon the foundation laid by the *Roloff* decision to reach the question that the Court of Appeals declined to resolve. The Indiana Supreme Court concluded, as we do, that the state may not refuse to apply resource spend down to the application of an SSI recipient who would have been eligible for resource spend down under the state's 1972 plan. *Indiana Dept. of Public Welfare* v. *Payne*, supra, 622 N.E.2d 468. "In Section 209 (b) states such

as Indiana, after an applicant has met this threshold eligibility requirement [of SSI eligibility], the inquiry then focuses upon whether the applicant would have been entitled to benefits under Medicaid regulations existent on January 1, 1972. . . . Thus, once an applicant has demonstrated SSI eligibility, he is then entitled to utilize Indiana's resource spend-down provision [of the 1972 plan] to, in turn, meet Indiana's standard resource allowance which is more restrictive than its federal counterpart." (Citations omitted.) Id. Thus, the court held, the plaintiff may be entitled to use resource spend down to establish his eligibility for medicaid benefits if he or she qualifies for SSI benefits. Id.; see also *Indiana Dept. of Public Welfare* v. *Teckenbrock*, 643 N.E.2d 306, 307 (Ind. 1994) (applying rule of *Payne* that " 'the resource spenddown component of eligibility employed by Indiana in 1972 applies only after SSI eligibility requirements have been met' ").

We recognize that our conclusion constitutes a partial rejection of our analysis in *Matarazzo*. We acknowledge, as we must, that our adherence to the doctrine of stare decisis serves the fundamental interest of our judicial system in stability and consistency. "It must also, however, be acknowledged that '[i]t is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations. . . .' *Barden* v. *Northern Pacific R. Co.*, 154 U.S. 288, 322, 14 S. Ct. 1030, 38 L. Ed. 992 (1894). The United States Supreme Court has said that when it has become 'convinced of former error,' it has 'never felt constrained to follow precedent.' *Smith* v. *Allwright*, 321 U.S. 649, 665, 64 S. Ct. 757, 88 L. Ed. 987 (1943), reh. denied, 322 U.S. 769, 64 S. Ct. 1052, 88 L. Ed. 1594 (1944)." *White* v. *Burns*, supra, 213 Conn. 336. This principle is particularly appropriate when we interpret federal law, as we do in this case, because in such a case our state legislature

is powerless to correct our errors. Our review of the recent precedent, federal regulations and amendments, statutory language and legislative history convinces us that we must modify our analysis in order to reflect accurately the legislative intent embodied in § 209 (b). Accordingly, we reject the analysis of *Matarazzo* to the extent that it is inconsistent with the reasoning of this opinion.

## B

In this case, the plaintiff does not dispute that she is not eligible for SSI benefits. Thus, we must conclude that the state is not required to provide medicaid benefits to her under its categorically needy program, regardless of whether her incurred medical expenses exceed her excess resources.

The defendant argues that, having reached this conclusion, our inquiry should now end. The plaintiff does not claim, however, that she is eligible for medical assistance under the state's *categorically* needy program. Rather, the plaintiff maintains that she qualifies for benefits under the state's *medically* needy program if the state is required to apply resource spend down in its determination of eligibility for that program. We have undertaken an analysis of § 209 (b) and the state's obligations under its *categorically* needy program, however, because the intricately interdependent nature of the medicaid statutory scheme prevents resolution of the plaintiff's claim without an accurate understanding of these fundamental provisions. We now proceed to an examination of whether application of resource spend down is required under the state's *medically* needy program.

## II

The defendant argues that the federal statutes do not require the state to provide medicaid benefits to the

medically needy. The state provides these benefits voluntarily; its actions are not governed by the statutory requirement to provide benefits to all categorically needy applicants who would have been eligible for them under the 1972 plan. Thus, the defendant argues, the eligibility requirements for the medically needy program can be more restrictive than the 1972 plan, and the decision not to employ resource spend down in this program is not a violation of federal law.

The defendant's argument, however, oversimplifies this question, which is governed by federal statutes and regulations that strongly resist simplification. Although the state conducts its medically needy program on a voluntary basis, once the state elects to conduct such a program it is required to do so in conformity with federal statutory and regulatory guidelines. See 42 U.S.C. § 1396a (a) (10) (C); 42 C.F.R. § 435.300 et seq. These statutes and regulations limit the ability of a state that chooses to conduct a medically needy program to establish whatever requirements it prefers.

Specifically, the statutes and regulations limit the state's freedom to establish eligibility criteria under its medically needy program by reference to the eligibility criteria of the SSI program and the state's categorically needy program. For example, 42 U.S.C. § 1396a (a) (10) (C) (i) (III) and (r) (2) (B) provide that, for its medically needy program, the state must use a methodology for resource eligibility determinations that is no more restrictive than the methodology employed under the SSI program. Section 1396a (r) (2) (B) provides that a "methodology is considered to be 'no more restrictive' if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance." That section further provides that the methodology may be less restrictive than that used by the SSI program.

The federal regulation that governed the § 209 (b) state's resource eligibility determination in September, 1993, further provided: "To determine eligibility on the basis of resources for medically needy individuals, the agency must . . . (e) (1) For aged, blind, or disabled individuals in States using requirements more restrictive than SSI, deduct the value of resources in an amount no more restrictive than those deducted under the Medicaid plan on January 1, 1972 and no more liberal than those deducted in determining eligibility under SSI. (2) However, the amounts specified in paragraph (e) (1) of this section must be the same as those that would be deducted in determining, under § 435.121, the eligibility of the categorically needy . . . ." 42 C.F.R. § 435.845 (1992).

Thus, the regulation required the state to deduct from the applicant's resources the amounts that would be deducted under the § 209 (b) state's more restrictive requirements for its categorically needy program.[15] See

[15] The same regulation now provides in relevant part: "To determine eligibility on the basis of resources for medically needy individuals, the agency must . . . [d]educt the amounts that would be deducted in determining resource eligibility for the medically needy group as provided for in § 435.601 or under the criteria of States using more restrictive criteria than SSI as provided for in § 435.121. . . ." 42 C.F.R. § 435.845 (b) (1995). Thus, the regulation continues to require a § 209 (b) state to use the same methodology it used under its categorically needy program, unless the state chooses to apply a methodology that is less restrictive than the SSI program as permitted by 42 U.S.C. § 1396a (r) (2) and 42 C.F.R. § 435.601.

The state's freedom to set its medically needy resource standard is also limited by reference to the criteria it uses in its categorically needy program. The regulation governing resource standards that was in effect at the time of the plaintiff's application in September, 1993, permitted a § 209 (b) state to establish a medically needy resource standard that was lower than the SSI program only if the resource standard was not lower than the medically needy resource standard under the 1972 plan. 42 C.F.R. § 435.841 (1992). The applicable regulation now permits a § 209 (b) state to set a medically needy resource standard that is lower than the SSI program, but it must be no more restrictive than either the state's most restrictive categorically needy resource standard or the medically needy resource standard contained in the 1972 plan, whichever is least restrictive. See 42 C.F.R. § 435.840 (1995).

also 42 C.F.R. § 435.330 (1992) (establishing general requirement that § 209 [b] states apply to medically needy applicants same requirements applied to categorically needy applicants).

Our review of these statutes and regulations leads us to the conclusion that the state is not granted unfettered control over the eligibility requirements for its medically needy program. Specifically, the resource eligibility methodology applied in the medically needy program must not be more restrictive than that of the SSI program, and the state may not consider resources under its medically needy program that it would not consider under its categorically needy program.

In this case, the defendant does not seek to consider resources of the plaintiff that would not be considered under the SSI program or that would not be considered under the state's categorically needy program. The plaintiff is not eligible for resource spend down under the SSI program because that methodology is not applied by that program. Nor is she eligible under the state's categorically needy program for the resource spend down available through the 1972 plan because her resources exceed the standard set by the SSI program. Thus, the defendant is not required to apply resource spend down to the determination of the plaintiff's application for benefits under the medically needy program. The defendant is not applying a methodology to the plaintiff's application that is "more restrictive" than the methodologies applied by the SSI program or the state's categorically needy program. In other words, the defendant's treatment of the plaintiff's application does not result in a denial of benefits to an individual who would be eligible for benefits if the resource methodologies of those other programs were applied to her. Because we conclude that the defendant's determination that the plaintiff possessed excess resources under the state's medically needy program was not more

restrictive than the determination the defendant would properly reach under the state's categorically needy program, we conclude that the defendant did not improperly deny on this ground the plaintiff's application for medicaid benefits.[16]

### III

We again conclude, as we did in *Matarazzo*, that resource spend down represents a permissible and reasonable method of evaluating resources whose use would further the statutory goal of providing benefits to individuals whose income and resources are insufficient to meet necessary medical expenses. *Matarazzo* v. *Rowe*, supra, 225 Conn. 334–35. Moreover, we recognize that the state's policy of prohibiting the use of resource spend down may work to the detriment of relatively unsophisticated individuals or individuals who, because of their medical condition, are not able to expend their excess resources as soon as they incur medical expenses. Id., 335. Nevertheless, we conclude that the federal medicaid statutes leave this policy decision to the state. It is apparent, in light of precedent, federal statutes and regulations, that § 209 (b) does not require the defendant to provide medicaid benefits to an applicant unless that applicant qualifies for SSI benefits. Thus, the defendant was not required to apply resource

---

[16] We recognize the apparent incongruity of allowing the state to apply resources eligibility criteria in its medically needy program that are no more liberal than its categorically needy program. The medically needy program is designed to extend medical assistance to those who do not qualify for assistance under the categorically needy program and, if none of the medically needy criteria are more liberal, then the program will not serve this purpose. The state's operation of the medically needy program is voluntary, however, and the statutes allow the state to decide whether it will provide medical assistance to the class of medically needy applicants who possess greater resources than the categorically needy. A state may choose to evaluate the resources of its medically needy applicants in a manner that is no more liberal than the categorically needy program without rendering its entire medically needy program nugatory.

spend down to the plaintiff because, as she concedes, she is not eligible for SSI.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment dismissing the plaintiff's appeal.

In this opinion the other justices concurred.