[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Andrew G. Evans, appeals from a final decision of the defendant, department of social services ("the department"), denying his application for retroactive state administered general assistance medical benefits ("SAGA medical benefits") under General Statutes § 17a-111. The plaintiffs appeal is taken pursuant to General Statutes §§17b-61 (b) and 4-183 the Uniform Administrative Procedure Act ("UAPA").
On June 12, 2001, the plaintiff requested an administrative hearing before the department to contest the regional office's denial of retroactive SAGA medical benefits for January and February 2001 due to excess assets. A hearing was held before the department on August 23, 2001. On September 11, 2001, the hearing officer issued his final decision making the following relevant findings of fact:
2. The [plaintiff] was admitted to Hartford Hospital on January 28, 2001 following a snowmobile accident. The [plaintiff] remained in a hospital induced coma until March 15, 2001. CT Page 10453
 3. The application for SAGA Medical was completed on behalf of the [plaintiff] on January 31, 2001 and signed by a worker from Hartford Hospital. [The plaintiffs initial application was dated March 9, 2001; it did not mention an IRA as an asset, but after the plaintiff became communicative on March 15, 2001, he disclosed the existence of the IRA. An amended application was filed on March 18, 2001.]
. . .
 7. [As shown in the amended application], the [plaintiffs] assets consisted of a People's Bank checking account with a value of $560.22, [the] IRA with a value of $5,731.64, and an American Eagle Federal Credit Union savings account with a balance of $10.72
 8. The [plaintiff] redeemed the full value of his IRA . . . within 10 days of the Department's notice to reduce his assets to below $1,000.00 [the SAGA medical asset limit].
 9. As of March 30, 2001, the value of the [plaintiffs] three counted assets was reduced to below $1,000.00.
. . .
 11. On April 25, 2001 and April 26, 2001 the Department granted SAGA Medical benefits effective March 1, 2001, the first of the month in which the [plaintiffs] assets were reduced to below $1,000.00, and denied SAGA Medical for January and February 2001 due to excess assets.
 12. The counted value of the [plaintiffs] assets exceeded the $1,000.00 asset limit for the SAGA Medical program for January and February 2001.
. . .
 14. The [plaintiffs] . . . IRA was an accessible asset and available to the [plaintiff] in January and February 2001.
15. No eligibility existed for the SAGA Medical CT Page 10454 program in January and February 2001 due to the [plaintiffs] counted assets from his savings account, checking account, and IRA exceeded the program limits.
(Return of Record ("ROR"), Volume I, pp. 2-4.)
The hearing officer concluded that the department had properly found the plaintiff ineligible for SAGA medical benefits because his counted assets exceeded the asset limit. "Neither the [plaintiffs] medical condition, nor the family's lack of knowledge of the assets [here, the IRA] precludes the existence of the assets. The lack of knowledge of a policy requirement prior to submitting an application is not a valid defense, nor is it reason to find an asset inaccessible." (ROR, Volume I, p. 5.)[1] The plaintiff, aggrieved by the failure of the department to grant his application, has appealed from the final decision.
At the outset, the court notes the well established principles governing the court's standard of review for administrative appeals from state agency decision. "Judicial review of [an administrative agency's] action is governed by the [UAPA] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotations omitted.) Cadlerock Properties Joint VentureL.P. v. Commissioner. of Env. Protection, 253 Conn. 661, 668-69 (2000), cert. denied, 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2001).
Eligibility for SAGA medical benefits follows medicaid, UPM § 8080.15, which requires a state to make eligibility effective "no later than the third month before the month of application. . . ."42 C.F.R. § 435.914. Prior to 1990, if an applicant qualified for medicaid, then the applicant qualified for benefits in the three-month retroactive period without meeting an asset test. On or about 1990, several states changed their regulations so that the retroactive benefits would be available only for those months in which the applicant met the asset limit requirements. See, e.g., Michigan Program Eligibility Manual § 400; UPM § P-1560.05 ("1. Determine eligibility for each of the CT Page 10455 3 months prior to application separately; 2. Consider eligibility factors only for a retroactive month in which there were medical services which are payable under Medicaid.")
A challenge to the Michigan regulations was rejected in Kurzyniec v.Department of Social Services, 526 N.W.2d 191, 195 (Mich.App. 1995). The court concluded that the new policy was reasonable and that it conformed with 42 C.F.R. § 435.9 14(a)(2), providing for three months of retroactive benefits if the individual "[w]ould have been eligible for Medicaid at the time he received the services if he had applied (or someone had applied for him). . . ." The court continued: "This regulation is part of the same set of regulations that require state policies to be `reasonable.' 42 C.F.R. § 435.850. It establishes the minimum standard for granting retroactive benefits. Although [the agency's] new policy is more restrictive than the old one, it clearly meets the standard set forth in 42 C.F.R. § 435.914 (a)(2)." Id.
In Kurzyniec, the applicants for benefits responded to the requirement that they show eligibility in the retroactive period with a claim that they be allowed to "spend down" their assets in order to qualify. See also Ross v. Giardi, 237 Conn. 550 (1996); Matarazzo v. Rowe, 225 Conn. 314
(1993), modified, Ross v. Giardi, 237 Conn. 550, 552 (1996). The courts have usually rejected this attempt. It has been noted that the "federal medicaid statutes leave this policy decision to the state [legislatures]." Ross v. Giardi, supra, 575; see also Kurzyniec v.Department of Social Services, supra, 526 N.W.2d 197.
The court cites these prior decisions because these decisions note the failure to have a spend down in the retroactive period "may work to the detriment of relatively unsophisticated individuals or individuals who, because of their medical condition, are not able to expend their excess resources as soon as they incur medical expenses." Ross v. Giardi, supra, 237 Conn. 575. In Kempson v. Dept. of Human Resources,397 S.E.2d 314, 317 (N.C.App. 1990), aff'd, 403 S.E.2d 279 (N.C. 1991), the court described the difficulties facing an applicant seeking retroactive benefits without a resource spend down:
The paradox occurs with a less sophisticated individual or an individual who is not in a condition actually to spend down resources. Upon application to the department, this individual would be informed that, because of excess resources, medical expenses would not be eligible for payment. This result would occur regardless of how minuscule the excess resources were in comparison to the medical expenses incurred in that three-month period. CT Page 10456
Id., quoting Haley v. Com'r of Public Welfare, 476 N.E.2d 572, 578-79
Mass. (1985). These cases demonstrate that the department may require the applicant to satisfy the SAGA medical benefits asset requirements for each of the three months prior to the date of the application. If the applicant had any amount of assets above the $1000 limit during the retroactive period, he would be disqualified from receiving SAGA medical benefits.
The UPM provides that: "The Department counts the assistance unit's equity in an asset toward the asset limit if the asset is not excluded by state or federal law and is . . . available to the unit." UPM § 4005.05.B.1.a. An IRA is considered an asset. See Mistrick v. Division ofMedical Assistance and Health Services., 712 A.2d 188, 197 (N.J. 1998);Mannix. v. Department of Human Services, 731 N.E.2d 1154, 1157 (Ohio App. 2 Dist. 1999), cert. denied, 719 N.E.2d 6 (Ohio 1999). "Generally, all assets must be considered in determining Medicaid eligibility."Schmidt v. Ward County Social Services Bd., 634 N.W.2d 506, 510
(N.D. 2001). The plaintiff claims, however, that the hearing officer should have concluded that the asset was inaccessible to the unit." UPM § 4005.05.C.2. As long as the asset remains inaccessible, it is not counted toward eligibility. UPM § 4015.05.A.
An "inaccessible asset" is defined in the UPM as "an asset which someone owns but, for some reason beyond his or her control, cannot readily convert to cash." UPM § 4000.01. Section 4015.05.C gives five non-exclusive examples of inaccessible assets. The first is "property in probate." See also Verde v. Department of Income Maintenance, Superior Court, judicial district of New London at Norwich, Docket No. 095907 (October 28, 1991, Axelrod, J.) (6 C.S.C.R. 1082). ("The bank account in question is in Probate . . . The asset therefore may not be considered as available to the applicant in determining eligibility for Medicaid assistance.")
The second example is "a jointly held asset which cannot practically be subdivided and which a joint holder refuses to liquidate." The third example is "a security deposit on rental property or utilities." The fourth example is a trust where the trustee "refuses to release all or part of the funds to the unit. This type of asset is sometimes considered available to the assistance unit in the [medical assistance] program. . . ." See also Tesson v. Commissioner of the Department ofTransitional Assistance, 671 N.E.2d 977 (Mass.App. 1996) (trust established for injured child was "inaccessible asset" and did not affect family's eligibility for program benefits). The fifth example is "personal property which is no longer in the physical possession of the assistance unit if the person now possessing the asset refuses to CT Page 10457 return it to the unit."
In an interpretive section, the UPM gives examples of the type of verification to be submitted by the applicant to prove that an asset is inaccessible. These include a document showing that another party is not willing or able to liquidate a joint asset, a police report showing that an asset has been stolen from the assistance unit, and a real estate company's statement that "the assistance unit has made a bonafide effort to sell real property but has been unable to sell." UPM § P-4099.15; see also Dubois v. Department of Health and Rehabilitative Services,626 So.2d 983, 985 (Fla.App. 1 Dist. 1993) (applicant was not able in good faith to sell a parcel of undeveloped real property and therefore it was an inaccessible asset); Post v. Social Services, 556 N.W.2d 661, 665
(ND. 1996) (where there is an inability to collect from a judgment debtor, the asset is not counted as an available resource).
While these examples are not exclusive, they do indicate that the phrase "beyond his control" as used in the definition of inaccessible assets in UPM § 4000.01 does not extend to the situation where the applicant is unable to spend down his assets due to a medical condition. These examples indicate an impediment raised by a third party, such as a co-owner, a non-related trustee, a thief, an unwilling purchaser, a judgment-proof debtor, that leaves the applicant powerless to convert the asset readily into cash. The court gives deference to an agency s examples and its interpretation of its own regulations. MacDermid, Inc.v. Department of Environmental Protection, 257 Conn. 128, 138-39 (2001).
That the IRA in question here is not inaccessible follows from the discussion of the spend down cases referred to above. As indicated, these cases explain that under the current regulations on retroactive benefits, there may be instances where a party under a medical disability is not able to liquidate an asset, but may still be disqualified. Contrary to the plaintiffs contention, Plaintiff's Brief, p. 27, a state may limit the scope of the retroactive payments to those that are below the asset limitations month-by-month. Ross v. Giardi, supra, 237 Conn. 575;Kurzyniec v. Department of Social Services, supra, 526 N.W.2d 195.
Moreover, the lack of mental acuity has been held irrelevant to the determination that it was beyond the control of the applicant to liquidate an asset.[2] The Superior Court has held that to classify an asset as inaccessible because of an applicant's lack of knowledge of the asset "would place an impossible burden on DSS." Moore v. Department ofSocial Services, Superior Court, judicial district of New Britain, Docket No. 492655 (December 9, 1999, Hartmere, J.). The result that the plaintiff advocates would "lead to an unfair and anomalous result that incompetents would receive medicaid benefits while competent individuals CT Page 10458 of a similar financial station would not." Marsh v. Department of PublicWelfare, 553 N.E.2d 1234, 1237 (Ind.App. 1 Dist.1990) (Baker, J. concurring); see also Payne v. Department of Human Services, 704 N.E.2d 270
(Ohio App. 10 Dist. 1997) (incompetency of patient did not render his assets unavailable for purposes of medicaid eligibility).
The burden is on the applicant to demonstrate that an asset is inaccessible. Moore v. Department of Social Services, supra; Superior Court, Docket No. 492655; UPM § 4015.05.B.1. This would normally require the relatives of an applicant to seek the appointment of a temporary conservator under General Statutes § 45a-654. Had a conservator been appointed, he or she likely would have discovered the IRA statement by examining the plaintiffs mail and other business papers and taken steps to liquidate it.[3] Cf. General Statutes § 45a-655
(d) (requiring a conservator of an estate of a person receiving medicaid to "apply toward the cost of care of such person any assets exceeding limits on assets set by statute or regulations adopted by the Commissioner of Social Services."); See also Opp v. Social ServicesBoard, 640 N.W.2d 704, 709 (N.D. 2002) (duty of personal representative to resolve inheritance).
The hearing officer's conclusion that the plaintiff had excess assets in the three-month period prior to the March 1, 2001 eligibility date was not unreasonable, arbitrary, illegal or an abuse of his discretion.
Accordingly, the plaintiffs appeal is dismissed.
Henry S. Cohn, Judge