GORENFLO, Appellee,

v.

OHIO DEPARTMENT OF HUMAN SERVICES, Appellant.

[Cite as *Gorenflo v. Ohio Dept. of Human Serv.* (1992), 81 Ohio App.3d 500.]

Court of Appeals of Ohio,
Marion County.

No. 9-91-58.

Decided June 26, 1992.

---

*J.C. Ratliff,* for appellee.

*Lee I. Fisher,* Attorney General, and *Julie Gabriel,* Assistant Attorney General, for appellant.

THOMAS F. BRYANT, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Marion County finding Nettie Gorenflo qualified for continued Medicaid benefits and reversing the contrary decision of the Ohio Department of Human Services ("ODHS").

Nettie Gorenflo suffered injuries rendering her semi-comatose, level II coma, for which her guardian recovered on her behalf a substantial money settlement. The balance of the settlement after payment of debts, fees and expenses was held by her guardian in bank deposits subject to withdrawal only on the order of the Marion County Common Pleas Court, Probate Division.

ODHS determined administratively that the deposits in Nettie's behalf were available resources greater than permitted by guidelines for Medicaid qualification. On November 26, 1990, ODHS notified Nettie's guardian, her mother, Kathleen Gorenflo, of its proposal to terminate Nettie's Medicaid benefits effective December 31, 1990. Upon Kathleen's request, pursuant to statute and regulation, on December 20, 1990 a state hearing was held concerning the proposed termination. On December 28, 1990, the state hearing officer issued her decision overruling Kathleen's request for continued benefits and recommending ODHS's proposed termination of Nettie's benefits.

Kathleen appealed further and on January 15, 1991, an ODHS administrative hearing examiner affirmed the decision.

Thereafter, pursuant to R.C. 119.12, Kathleen filed an appeal of the administrative decision with the Court of Common Pleas of Marion County. That court rendered its decision on November 14, 1991, reversing and vacating ODHS's decision to terminate Nettie's benefits.

It is from this judgment that ODHS now appeals, assigning three assignments of error. The assignments of error are:

"I.   The common pleas court erred in finding that the administrative appeal decision was not supported by reliable, probative, substantial evidence or was not in accordance with law.

"II.   The common pleas court erred as a matter of law in finding that an express trust was created.

"III.   The common pleas court erred as a matter of law in finding that the bank account in question was not an available resource, and by not requiring the appellee to petition the probate court for release of funds from the bank account."

Because ODHS's second and third assignments of error are, in essence, arguments in support of its first assignment of error, and because all the arguments are intertwined, we address them together.

ODHS contends the trial court abused its discretion in reversing and vacating the decision terminating Nettie's Medicaid benefits when reliable, probative and substantial evidence showed Nettie's available resources were greater than the amount allowed for a qualifying recipient.

As we stated in *Owens v. Ohio Bur. of Emp. Serv.* (June 6, 1991), Crawford App. No. 3-90-28, unreported, at 3-4, 1991 WL 104334:

"When reviewing an administrative appeal, the scope of this Court's review is limited to whether the trial court abused its discretion when entering its judgment.   See *Angelkovski v. Buckeye Potato Chip Co.* (1983), 11 Ohio App.3d 159 [11 OBR 242, 463 N.E.2d 1280].   A finding of abuse of discretion * * * would require 'more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.' *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 [5 OBR 481, 482, 450 N.E.2d 1140, 1142]."

The trial court found that Nettie did not have available monetary assets greater than the resource limitation imposed on qualifying Medicaid recipients because the fund deposited on her behalf in the Fahey Bank was an express trust and thus unavailable to Nettie as a resource.

The issue of whether a trust exists and, if so, its availability to a Medicaid recipient is a determination for the trier of facts.   Here, the state hearing officer, sitting as the trier of facts, found that Nettie did not qualify for

Medicaid benefits because she had a trust fund accessible to her guardian for her medical care and thus her available resources were greater than the $1,500 resource limitation for Medicaid eligibility. See Ohio Adm.Code 5101:1–39–06(B).

The state hearing officer based her decision on the fact that the purported trust consisted of liquid assets of approximately $65,000 available to Nettie upon court approval and that the court previously released funds when necessary for Nettie's benefit. ODHS also offered, and the hearing officer received, evidence consisting of a written determination by the Marion County Prosecutor that Nettie's funds were an available resource. The administrative appeal hearing examiner affirmed the hearing officer's findings of fact and her conclusions.

In support of her argument for continued benefits, Kathleen cites ODHS's prior determination that Nettie's money is held in a trust fund and that it was therefore an unavailable resource. She argues that the probate court has "unfettered discretion" in determining when, and if, to release the funds and therefore the probate court is the trustee of the fund with intent to preserve the trust fund corpus until Nettie reaches eighteen years of age. Kathleen also asserts that ODHS failed to raise in the court below, and thus has failed to preserve for appeal purposes, the issue of whether the funds in question are held in an express trust.

■ After examining the record, we note that ODHS raised in the court below, and thus preserved, the issue of whether the funds are held in a trust. Next we observe that pursuant to Ohio Adm.Code 5101:1–39–271(B)(3), ODHS not only was allowed to, but indeed is required to review periodically, the availability of funds held in trust for redetermination of the qualification for continuing benefit of recipients who are beneficiaries of trusts. Finally, we note that the question of whether or not the probate court would approve the expenditure of Nettie's funds for her general care calls for conjecture because the guardian has never requested authority to make such expenditures.

■ Turning to the issue of the status of Nettie's money as a trust *res*, we note that availability of the funds for the care of the beneficiary must be determined by the terms of Ohio Adm.Code 5101:1–39–271. However, if no express trust exists, availability depends on the fund's status as a nonexempt countable resource by the terms of Ohio Adm.Code 5101:1–39–05 and 5101:1–39–26.

The only express term for deposit of Nettie's money in the Fahey Bank is contained in the probate court's judgment entry disbursing to the guardian Nettie's settlement monies received for her personal injury claim. The

pertinent part of the judgment entry states, " * * * that the balance remaining on the settlement proceeds shall remain at the Fahey Bank until Nettie Lynn Gorenflo reaches the age of eighteen, or until further order of the Court."

The distinction between a guardian-ward relationship and a trustee-beneficiary relationship is often blurred and confusing. In 53 Ohio Jurisprudence 3d (1984) 18, Guardian and Ward, Section 4, it is stated:

"A guardianship is distinguished from a trust in that the guardian does not have title and the ward's interest is legal, while a trustee has legal title and the beneficiary has an equitable interest."

Also, in 1 Bogert, Trusts & Trustees (2 Ed.1984) 146, 147, Section 13, it states, in pertinent part, as follows:

"Guardians * * * for infants, persons of unsound mind * * * and others laboring under a disability, are often called trustees and sometimes actually adjudged to be such. But it is clear that neither historically nor in modern theory and practice are they true trustees."

Pursuant to R.C. 2101.24(D) a probate court has jurisdiction "[t]o appoint and remove guardians * * * direct and control their conduct, and settle their accounts."

Here, it is clear that no trust, express or otherwise, was ever created to hold Nettie's share of her settlement proceeds. The fact that the probate court has jurisdiction for oversight of Nettie's funds and of the accounts and other proceedings of her guardian for deposit and expenditure of the ward's funds is not evidence proving that the court is trustee of an express trust, nor is it probative of the existence of an express trust. The probate court's continuing jurisdiction over the ward, her funds and her guardian is imposed by statute to ensure that the ward's property is not squandered during her disability and is preserved until her disabilities of age and health are relieved, save as authorized to be expended for her health, safety, education and the like upon showing of necessity and good cause.

Although ODHS initially considered the settlement proceeds to have been placed in a trust fund as advised by Nettie's attorney, upon taking evidence a state fact-finding officer concluded that the funds in question were not held subject to the probate court's arbitrary denial of their use or under the restrictions of an express trust prohibiting their use for the beneficiary's necessity, and therefore were available to Nettie as a resource and, because her available resources exceeded eligibility limitations, she was ineligible to receive continued Medicaid benefits. Nevertheless, the common pleas court reversed and vacated ODHS's decision to terminate Nettie's benefits.

As this court stated in *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 870, 577 N.E.2d 720, 724:

"Since *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 54, 131 N.E.2d 390, 394, it has been clear that the review under R.C. 119.12 of an agency's order is a 'hybrid review of an agency's order * * * which is one neither strictly of law nor of law and fact * * *.' It 'cannot be a trial *de novo.' Id.* at 279, 58 O.O. at 53, 131 N.E.2d at 393. In *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267, the Supreme Court ruled that '[i]n undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. * * * [T]he court should defer to the determination of the administrative body, which, as the fact finder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. * * *' "

In *In re Williams* (1991), 60 Ohio St.3d 85, 573 N.E.2d 638, the Ohio Supreme Court addressed the standard a common pleas court must apply in reviewing an administrative agency order and stated:

"In an appeal from an administrative agency, a reviewing court is bound to uphold the agency's order if it is ' * * * supported by reliable, probative, and substantial evidence and is in accordance with law. * * *' R.C. 119.12; see, also, *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265."

Therefore, if there was reliable, probative and substantial evidence in accordance with law that Nettie had access to an available resource greater than allowed for a Medicaid recipient, the trial court was bound to uphold ODHS's order terminating the benefits. Since the trial court reversed and vacated ODHS's decision, our scope of review is whether the trial court abused its discretion in doing so. *Owens, supra.*

Based on the record, we perceive that the trial court's judgment was arbitrary and, hence, an abuse of its discretion. Because the settlement monies were not the subject of an express trust, and because the probate court previously released monies upon Kathleen's petition, there was sufficient evidence for ODHS, interpreting the applicable regulations noted, to conclude that the remaining funds were available to Nettie for disbursement.

Since ODHS properly determined that Nettie no longer qualified for Medicaid benefits, it is incumbent upon Kathleen to petition the probate court for disbursements of the settlement funds in order to determine their availability for Nettie's care and well-being. In passing, we note that whether the

settlement funds should be expended by Kathleen, as guardian, to care for Nettie is a matter properly left to the sound discretion of the probate court.

Accordingly, to the extent as discussed in our foregoing analysis, we find appellant's assignments of error well taken.

The judgment of the Court of Common Pleas of Marion County is reversed and the cause is remanded to that court with instructions to reinstate the decision of ODHS.

*Judgment reversed and cause remanded.*

HADLEY, P.J., and EVANS, J., concur.