PAYNE et al., Appellants,

v.

OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.

[Cite as *Payne v. Ohio Dept. of Human Serv.* (1997), 123 Ohio App.3d 341.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE03–386.

Decided Sept. 16, 1997.

*Martin, Pergram & Browning Co., L.P.A., William J. Browning* and *Dennis L. Pergram,* for appellants.

*Betty D. Montgomery,* Attorney General, and *John T. Williams,* Assistant Attorney General, for appellee.

DESHLER, Judge.

This is an appeal by appellants, Elba Payne and Thomas N. Taneff, from a judgment of the Franklin County Court of Common Pleas affirming a decision of appellee, Ohio Department of Human Services ("ODHS") denying retroactive Medicaid eligibility for Payne.

Thomas N. Taneff was appointed guardian of the person and estate of Elba Payne on February 15, 1995. At that time Payne was described by his attending physician as depressed, agitated, and suffering from ALS, a degenerative disease that caused him to be dependent upon a ventilator for respiration. Payne was a patient at Northland Terrace Medical Center from November 16, 1994 to mid-January 1995. During the period in question Payne owed Northland Terrace Medical Center in excess of $25,000 for his stay there. In March 1995, Payne became a resident of the Mayfair Village Rehabilitation Center and incurred further expenses of approximately $19,000.

The appointment of Taneff as guardian for Payne was prompted by Payne's caregivers, who sought the guardianship because Payne had become uncooperative in his care and in paying for the services he was receiving. Previously, on December 5, 1994, Payne's physician, Dr. Mason, had been compelled to order a psychiatric evaluation of Payne, which was followed by further psychiatric evaluation at Mt. Carmel Medical Center in Columbus. A statement by Mason, which is in evidence, indicates that due to Payne's physical and mental condition, he was incapable of cooperating with staff members and caregivers regarding his personal affairs and that, in Mason's professional opinion, Payne was incompetent

during his stay at Northland Medical Center from November 1994 to January 1995.

On March 1, 1995, Taneff, as guardian, filed an application on behalf of Payne for Medicaid benefits. The application was denied by the Franklin County Department of Human Services ("FCDHS") because its investigation revealed assets disclosed by Payne in response to an earlier Medicaid application in Scioto County, Ohio. These assets included homestead property in Kentucky and approximately $6,000 in two bank accounts. Depletion of these assets was not initiated by the guardian until May 1995. Payne's eligibility for Medicaid was eventually granted effective June 1, 1995; however, retroactive eligibility for the period beginning January 1, 1995 was denied. The denial of retroactive eligibility for Medicaid was based on a determination by FCDHS that the value of assets in the guardianship estate account exceeded the threshold amount of $1,500 prior to June 1995. The determination by FCDHS was eventually upheld in a state hearing decision issued on November 16, 1995, which itself was subsequently upheld upon further administrative appeal to ODHS, by its decision on December 18, 1995.

The guardian filed a timely notice of appeal from the decision of ODHS to the Franklin County Court of Common Pleas pursuant to R.C. 5101.35(E) and 119.12.

On January 29, 1997, the Franklin County Court of Common Pleas issued a decision affirming the decision of ODHS, and finding that the assets available to Payne exceeded the threshold requirements for Medicaid eligibility during the period for which retroactive eligibility was denied. The court of common pleas rejected appellants' contention that Payne's incompetent mental condition, in conjunction with restrictions imposed upon a guardian by R.C. Title 21 and the Local Rules of Franklin County Probate Court, prevented the guardian from disbursing any of the assets in payment of the obligations of the guardianship estate prior to a filing of an inventory.

Appellants have timely appealed and bring the following assignment of error:

"The Common Pleas Court committed prejudicial error by not reversing the decision of the administrative agency."

▮ Initially, we note that this administrative appeal is brought pursuant to R.C. 119.12, under which, upon appeal to the court of common pleas, that court must determine whether the final order of the administrative agency, ODHS in this matter, is supported by reliable, probative, and substantial evidence and is in accordance with law. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. Upon appeal from the court of common pleas to this court, however, our review is more limited; we are limited to a determination of whether the court has abused its discretion in finding that the order of the administrative

agency, was, in fact, supported by reliable, probative, and substantial evidence and in accordance with law. Abuse of discretion connotes more than a mere error of judgment, but "perversity of will, passion, prejudice, partiality or moral delinquency." *Lorain City. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267.

Eligibility for Medicaid in Ohio is predicated upon the recipient possessing nonexempt resources not exceeding $1,500. Ohio Adm.Code 5101:1–39–05(A)(8). " 'Resources' are defined as cash and any other personal property, as well as any real property, that an individual and/or spouse owns, has the right, authority, or power to convert to cash (if not already cash), and is not legally restricted from using for his support and maintenance." Ohio Adm.Code 5101:1–39–05(A)(1). It is undisputed in the present matter that Payne possessed real property and bank accounts in excess of $1,500 for the period for which he now seeks retroactive Medicaid eligibility.

It also does not appear in dispute that Payne had already accumulated, as of January 1, 1995, care expenses in excess of the value of his assets, such that the guardianship was in fact insolvent at the time of the appointment of the guardian and thereafter. The issue of Payne's solvency and the guardianship estate, however, is not determinative, because Ohio defines Medicaid eligibility in terms of assets available, without taking into account the extent to which those assets may be offset by corresponding liabilities except in instances of specific encumbrances such as mortgages on real property. Appellants argue that the assets of the guardianship were not "available" for purposes of Ohio Medicaid eligibility determination because Payne was incompetent to make or authorize expenditures during the period in which the assets might have been depleted to meet the Medicaid eligibility requirement and because the authority of the probate court over insolvent estates under R.C. 2111.24 and 2117.15 constituted legal encumbrances on the guardian's use of the assets so that neither Payne nor the guardian had a legal right to them as required by Ohio Adm.Code 5101:1–39–05(A)(16)(b).

■ Appellant initially relies upon Ohio Adm.Code 5101:1–39–05(A)(15)(a), providing as follows:

"An individual may not be aware of his ownership of an asset. If this is the case, the asset is not a resource during the period in which the individual was not aware of his ownership."

This section, however, must be viewed in context. Subsequent subsections of Ohio Adm.Code 5101:1–39–05(A)(15)(b) refer to discovery of previously unknown assets:

"The value of the previously unknown asset, including any monies (*e.g.* interest) that have accumulated on it through the month of discovery by the individual, is income (not a resource) in the month of discovery."

Ohio Adm.Code 5101:1–39–05(A)(15)(c):

"Beginning with the month after the month of discovery, the previously unknown asset is a resource subject to the resources regulations."

These sections are plainly intended, when read as a whole, to refer to assets unknown to the owner because of their concealed origin, source, etc., rather than assets or resources of which the owner is unaware due to his own impaired mental condition which has caused him to no longer have a grasp upon financial affairs of which he was previously cognizant. In view of the factual background in this case, we do not agree with appellants that Ohio Adm.Code 5101:1–39–05(A)(15)(a) applies to make Payne's assets noncountable resources for purposes for determining Medicaid eligibility.

The second ground advanced by appellants for not counting Payne's assets against the Medicaid resource requirement is that, even after a guardian was appointed for Payne, the guardian was not free to deplete the assets in order to qualify for Medicaid. Appellants cite R.C. 2111.24, which provides that an insolvent estate must be settled by a guardian in a matter similar to that set forth in R.C. 2117.15:

"An executor or administrator may proceed to pay the debts due from the estate in accordance with Chapters 2113. to 2125. of the Revised Code. If it appears at any time that the estate is insolvent, the executor or administrator may report that fact to the court, and apply for any order that he considers necessary because of the insolvency. * * * "

Appellants also cite Franklin County Probate Rule 29.2(B) which provides that "[t]he court will not approve the distribution of any estate assets or expenditures of guardianship funds prior to the filing of the inventory."

Appellants assert that, under this statutory scheme in conjunction with the local rules of the Franklin County Probate Court, Payne's guardian could not even apply for approval of the probate court to spend down the guardianship funds prior to filing an inventory, which the guardian was not in a position to file due in part to Payne's inability to give an accurate description of his assets.

Ohio Adm.Code 5101:1–39–05(A)(15)(d) specifically provides that resources may be considered for purposes of Medicaid eligibility even if they are only accessible through an agent such as a guardian. Two Ohio appellate courts have concluded that Medicaid eligibility may be denied even when a ward's debts exceed his estate's assets. In *Gorenflo v. Ohio Dept. of Human Serv.* (1992), 81 Ohio App.3d

500, 611 N.E.2d 425, the court found that the probate court's continuing jurisdiction over the ward and the funds of her guardianship did not render such assets unavailable, or beyond the legal right of access, for purposes of Medicaid eligibility. See, also, *Gill v. Ohio Dept. of Human Serv.* (Aug. 20, 1992), Cuyahoga App. No. 60567, unreported, 1992 WL 205070.

This position is consistent with the statutory scheme governing the payment of debts of an insolvent guardianship, as set forth above in R.C. 2117.15. The language from the above statute, cited by appellants, provides that the guardian, upon finding an estate insolvent, "*may* report that fact to the court, and apply for any order that he considers necessary because of the insolvency." (Emphasis added.) As pointed out by appellee, this does not preclude expenditure by the guardian for maintenance or support of the ward. In the case before us, the guardian made various disbursements on Payne's behalf which eventually resulted in the depletion of the guardianship estate by June 1995, when Medicaid was approved.

Even though we find that the above-cited statutes do not preclude access by guardian in such a manner that assets may be counted as resources for Medicaid eligibility purposes, we must examine more closely the specific issues raised by R. 29.2(B) of the Franklin County Probate Court, quoted above, which bars court approval of any distributions made from a estate assets by a guardian prior to the filing of an inventory. In the case before us, the guardian was appointed on February 15, 1995. The guardian filed an estate inventory with the probate court on March 27, 1995. Medicaid eligibility was ultimately granted effective June 1, 1995. If Rule 29.2(B) were to serve as a shelter for assets on the facts before us, it would only do so for the period of February 15 through March 27. Prior to this the guardian was not in place and, as we noted above, Payne had access to his assets. Subsequent to March 27, the inventory was filed and there was nothing to prevent the guardian from depleting the estate assets so that they would fall below the Medicaid threshold.

For two reasons, we find that Rule 29.2(B) does not bar counting guardianship assets toward the Medicaid resource requirements. First, we note that the rule does not absolutely preclude payment of liabilities by the guardian so that assets will be depleted below the required level for Medicaid eligibility; appellant's expert at trial, a magistrate and chief counsel for the Franklin County Probate Court, testified that under the rule, absent court approval subsequent to the filing of an inventory, a guardian would be at risk and subject to surcharge if he paid creditors from estate assets and subsequently was found to have done so erroneously, either through mistake in the priority of the claims paid, or for other reasons. This does establish that a guardian is faced with a more difficult balancing task when weighing the prudence of paying off liabilities to deplete

estate assets than would be the case if he could obtain court approval for such actions; it does not, however, serve as a total bar to such a depletion of assets.

Secondly, there are policy reasons for not erecting Probate Rule 29.2(B) as a bar to counting assets for purposes of Medicaid eligibility. If this were done, insurmountable factual complexities as to eligibility for Medicaid could arise, such as is the case before us, wherein a ward might be eligible for Medicaid up until the date the inventory was filed with the probate court, and then ineligible thereafter due to a superfluity of resources. Reversing on this basis, we would essentially be granting Medicaid eligibility from February 15 through March 26, but denying it from March 27 through the date when assets eventually dropped below the resource level required for eligibility. One can conceive of situations in which guardian might in fact delay filing an estate inventory with the probate court in order to prolong Medicaid eligibility for an otherwise solvent ward. Finally, we note that counting assets as resources for Medicaid eligibility despite the existence of Probate Rule 29.2(B) merely prolongs the position of the ward for Medicaid eligibility purposes for as long as it takes the guardian to file the appropriate inventory, and thus does not effectuate change in the ward's position pre-guardianship.

We thus find that the existence of a guardianship, under the statutes and rules cited by appellants, does not preclude counting the assets possessed by Payne prior to June 1995 for purposes of determining Medicaid eligibility and that no exception is found in the Medicaid resource requirement set forth in Ohio Adm.Code 5101:1–39–05 for resources controlled for the benefit of the Medicaid applicant by a guardian.

In summary, we find that the statutory scheme governing Medicaid eligibility in Ohio makes no provision regarding guardianships that supports their use as asset shelters prior to or after the filing of an inventory demonstrating insolvency with the probate court, nor that the temporary or permanent incompetence of the Medicaid applicant precludes inclusion of resources in the Medicaid requirement even where the applicant, because of his mental or physical condition, cannot fully articulate his intentions with respect to those assets. Appellants' assignment of error is overruled. We conclude that the Franklin County Court of Common Pleas did not abuse its discretion in finding that the order of the ODHS was supported by reliable, probative, and substantial evidence and in accordance with law. The judgment of the Franklin County Court of Common Pleas affirming the order of ODHS is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and LAZARUS, JJ., concur.