JOURNAL ENTRY AND OPINION
Plaintiff-appellant Rose Notarian (Notarian; d.o.b. October 16, 1911) appeals from the trial court's R.C. 119 administrative appeal affirmance of the denial of Medicaid eligibility by the defendant-appellee, Ohio Department of Human Services (ODHS). For the reasons adduced below, we affirm.
A review of the record on appeal indicates that Notarian, who suffers from dementia and memory loss, entered the Heritage Care Nursing Home in July of 1997; she was approximately 85.75 years of age at the time. She remained in Heritage Care until sometime in October of 1997 when she became a resident of Oakpark Health Care Center.
On November 20, 1997, Notarian, whose assets consisted of her (1) home and (2) bank accounts of approximately $30,000 in value, took possession of two promissory notes from her son, Raymond L. Notarian. The first note was in the amount of $66,690, with 8.5% simple interest payable in 72 monthly installments of $472.39 beginning on December 1, 1997 with full principal due on November 1, 2003. This first note was consideration for Notarian's home located at 174 Wandle Road, Bedford, Ohio. See Real Estate Purchase Agreement between Notarian (the seller) and her son (the buyer) executed on November 20, 1997. The second note was for $26,000, with 8.5% simple interest payable in 72 monthly installments of $184.16 beginning on December 1, 1997 with full principal due on November 1, 2003. This smaller note was made in anticipation of Notarian transferring her bank account assets to her son. Notarian's life expectancy at the time the notes were made was 6.2 years. See Ohio Adm. Code 5101:1-39-228(F).
On December 11, 1997, Notarian, through her authorized representative, applied for Medicaid benefits with the Cuyahoga County Department of Human Services (CCDHS). This application was denied, subsequent to an interview, on February 2, 1998, because Notarian, at the time of the interview, had not yet distributed the bank account assets which were secured by the smaller note.
On January 29, 1998, a third promissory note was executed by the son in favor of the mother in exchange for a transfer of the mother's bank account assets. This third note, which was substituted for the second note, was for $30,000, bearing 12% simple annual interest in 72 monthly installments of $300 beginning on February 1, 1998 with full principal due on January 1, 2004. These extant notes, by their express terms, are non-negotiable, non-transferrable, and not subject to prepayment in whole or in part by the maker (the son). If Notarian happens to die prior to the principal due date for the notes, the notes transfer to the son.
On February 11, 1998, Notarian's authorized representative submitted a second application for Medicaid benefits with the CCDHS. This second application was denied by the CCDHS on June 8, 1998, for the stated reason that the value of Notarian's resources exceeded the $1,500 program eligibility limits. See June 8, 1998 denial notice. Subsequent to the mailing of the denial notice to Notarian, the CCDHS notified Notarian's counsel that the June 8, 1998 denial reason was being corrected to reflect the reason for the denial as being that Notarian's resources were improperly transferred for less than the fair market value. On June 15, 1998, Notarian requested a hearing before the state agency, Ohio Department of Human Services (ODHS), relative to the improper transfer of resources determination.
On August 28, 1998, subsequent to the discovery of further financial resources in the form of bank accounts in the name of Notarian, another denial notice was mailed to Notarian relative to the February 8, 1998 application; the reason stated in this supplemental denial notice was that there was insufficient information upon which to base an eligibility determination. A hearing relative to this reason was requested on September 11, 1998. The two hearing requests were consolidated for review by the agency.
On November 9, 1998, the ODHS hearing officer (Mr. Tom Leahy), with counsel for the parties and witnesses present, conducted an evidentiary hearing relative to Notarian's application. The hearing officer decision was issued on November 25, 1998, affirming the denial of the February 8, 1998 application on the basis of an improper transfer of resources for less than fair market value.
Notarian administratively appealed this November 25, 1998 decision with ODHS by letter received on December 10, 1998. On December 24, 1998, relative to the administrative appeal, ODHS: (1) affirmed the denial of Medicaid eligibility based upon insufficient information to establish eligibility; (2) affirmed the determination that the promissory notes constituted an improper transfer. In closing, the decision noted,
 As to the notice denying Medicaid, the decision is REVERSED. Compliance is not ordered in this case as Appellant has not been determined eligible for Medicaid for reasons not related to the determination of improper transfer of resources.
On January 27, 1999, Notarian filed her notice of appeal from the ODHS decision in the trial court. See R.C. 119.12 and 5101.35.
Subsequent to briefing by the parties and oral argument before the court, the trial court, on August 31, 1999, affirmed the decision of the ODHS using a half-sheet status form entry in which it was found that the decision of the ODHS was supported by reliable, probative, and substantial evidence and is in accordance with law. See Journal Vol. 2374, page 836. No other reasoning or explanation was provided by the trial court.
This timely appeal from the final order of the trial court presents six assignments of error for review. In addressing this R.C. 119 administrative appeal, we note that our appellate review is limited to whether the court of common pleas abused its discretion as to whether the administrative agency decision was supported by reliable, probative and substantial evidence and was in accordance with law. Payne v. Ohio Dept. of Human Services (1997), 123 Ohio App.3d 341.
The first assignment of error provides:
 I THE TRIAL COURT ERRED IN FAILING TO REVERSE ODHS' DENIAL OF MEDICAID ELIGIBILITY BECAUSE ODHS ADMITTED THAT THE SOLE BASIS FOR DENYING ROSE'S APPLICATION WAS INCORRECT.
In this assignment, appellant argues that once the ODHS determined that the initial denial of the Medicaid benefits application based upon excess resources is incorrect, see the ODHS decision of December 24, 1998, at 3, that the matter should have ended there and that the ODHS should have sustained the appeal and ordered the application to be granted. In short, it is argued by appellant that the ODHS was limited to considering whether appellant held resources exceeding the $1,500 Medicaid resource limitation, and was precluded from addressing the sub-argument contained therein whether appellant transferred her assets for less than fair market value.
The record does not support appellant's limited view of the scope and breadth of the ODHS determination. The appellant requested hearings on the denial of the application on two grounds; first, that there was insufficient information upon which to base an eligibility determination and, second, that Notarian's resources were transferred for less than fair market value. Having administratively appealed these bases before the agency, and presented evidence relative to both bases at the agency level, appellant cannot now complain that the agency analyzed the bases in making its determination.
The first assignment of error is overruled.
The second assignment of error provides:
 II THE TRIAL COURT ERRED BECAUSE APPELLEE' APPEAL DECISION IMPROPERL A PRESUMPTION OF IMPROPER TRANSFESADMINISTRATIVE UPON APPELLANT.
In this assignment, appellant cites to the Analysis Section of the ODHS decision of December 24, 1998, at page 4, which provides the following:
 Clearly, the notes were devised to avoid the utilization of the property in attempting to secure eligibility for Medicaid benefits. Therefore, there arises a presumption of improper transfer whether the transfer is for fair market value or not.
Appellant argues that the second sentence of the preceding excerpted passage imposed an improper standard of law. Appellant urges that such a presumption of improper transfer only arises after it has been determined that such transfer was made for less than fair market value. Reviewing the entirety of the ODHS decision and placing the excerpt in proper context, it is clear that appellant has taken the issue out of context. As noted within that decision, the agency addressed two issues; first, whether the transfer of the resources was for less than fair market value and, second, whether the transfer was done to avoid the utilization of the resource in determining eligibility. See the December 24, 1998, decision of the ODHS, at 3-4; Ohio Adm. Code 5101:1-39-07(B).[1]
In addressing these two issues, the ODHS stated the following in the passage immediately prior to the previously noted excerpt:
 The hearing officer concentrated upon the value received by Appellant and evidence was presented that the notes held, due to their being unsecured, non-negotiable and non-transferable, and the fact that the note pays interest only until the final payment, and determined that the transfers were for less than fair market value. Additionally, the notes have no cognovit provision or acceleration clause and, if Appellant dies prior to receiving the final payment, the maker of the note essentially has the entire debt forgiven. The hearing officer found that the notes were drafted November 20, 1997, and January 29, 1998. Application for Medicaid benefits were submitted December 11, 1997, and again February 11, 1998. Clearly, the notes were devised to avoid the utilization of the property in attempting to secure eligibility for Medicaid benefits. Therefore, there arises a presumption of improper transfer whether the transfer is for fair market value or not.
Placed in proper context, the ODHS had determined that the transfer was presumed improper, whether because the transfer of the resources was (1) for less than fair market value or (2) was done to avoid the utilization of the resource in determining eligibility. In either case, the presumption was a correct standard for imposition following the determination of less than fair market value or to avoid utilization.
The second assignment of error is overruled.
The third assignment of error provides:
 III THE TRIAL COURT ERRED IN FAILING TO REVERSE BASED ON THE INCREDIBLE FINDING THAT ROSE RECEIVED NOTHING IN RETURN FOR HER $96,690.
In this assignment, appellant argues that the determination that the transfer of $96,690 in resources was for less than fair market value was error because the appellant received something in return for having made the transfer, namely, interest payments on the notes of approximately $772 per month. Based on the evidence in the record on appeal, this argument fails.
Ohio Adm. Code 5101:1-39-05(A)(5) provides:
 Fair (current) market value of a resource is the going price for which real or personal property can reasonably be expected to sell on the open market in the particular geographic area involved.
In the case sub judice, the State's expert, Mr. Bob Greenwald, an attorney and Certified Public Accountant, testified that the notes had no fair market value and that there was no market for the notes given that the notes were non-negotiable and non-transferrable. Mr. Greenwald also testified that, even if the notes were transferrable, the value of the notes would be negatively affected by virtue of the lack of various provisions in the notes, namely, lack of an acceleration clause, lack of a cognovit clause, the failure to amortize the principal of the note over the course of the loan, and the extinction of the note upon the death of the holder (Mrs. Notarian). Mr. Rand Curtiss, a certified business appraiser, testified on behalf of Notarian that the fair market value of the $66,690 note was $68,275, and that the fair market value of the $30,000 note was $35,703. Despite these valuations, Mr. Curtiss conceded in his testimony that there was no current market or current market value for the notes for the same concerns raised by Mr. Greenwald. In fact, Mr. Curtiss acknowledged that a lending institution would not have made such loans with terms as those contained within the notes in question. See, generally, State Hearing Tr. at 105-107, 111-112, 131-135.
We cannot conclude that the agency or the trial court abused its discretion in determining that the resources were transferred for less than fair market value where there was competent evidence to suggest that the notes had no fair market value because they could not reasonably be expected to be resold on the open market.
The third assignment of error is overruled.
The fourth assignment of error provides:
 IV THE TRIAL COURT ERRED IN FAILING TO DETERMINE THAT ROSE'S APPLICATION SHOULD HAVE BEEN APPROVED UNDER OAC 5101:1-39-228.
In this assignment, appellant argues that her application should have been granted because the promissory notes should have been treated as annuities pursuant to Ohio Adm. Code 5101:1-39-228.
As cogently illustrated by appellee, for purpose of determining eligibility for Medicaid benefits, promissory notes are governed by Ohio Adm. Code 5101:1-39-273, whereas annuities are governed by Ohio Adm. Code 5101:1-39-228. Relying solely upon these two competing rules, the annuity rule has no relevance to this case.
Even were we to consider the annuity rule, we would similarly find appellant's analogy of the notes to an annuity to be inapplicable to the facts of this case as, annuities typically involve period payments of both principal and interest. Albert v. Ohio Dept. of Human Services (May 11, 2000), Cuyahoga App. No. 76207, unreported, 2000 WL 573191, at 2. Here, the notes made period monthly payments only as to interest, not principal.
The fourth assignment of error is overruled.
The fifth assignment of error provides:
 V THE TRIAL COURT ERRED BECAUSE APPELLEE'S DELAY VIOLATED THE LAW AND DENIED ROSE HER RIGHT TO DUE PROCESS.
In this assignment, appellant argues that the agency failed to: (1) rule on her February 9, 1998 application in a timely manner; and, (2) issue a timely ruling subsequent to her State Hearings. Appellant claims that the application had to be ruled upon within 45 days of its filing. See Ohio Adm. Code 5101:1-2-11. Appellant also claims that the agency was required to provide its State Hearing ruling within 70 days of the hearing. See Ohio Adm. Code 5101:6-7-01(B)(1). By virtue of these processing delays, appellant urges that her otherwise ineligible application should be rendered eligible and that she should be awarded Medicaid benefits.
This same argument was advanced in Albert v. Ohio Dept. of Human Services(May 11, 2000), Cuyahoga App. No. 76207, unreported, 2000 WL 573191, at 3-4, and found to be without merit because the delay did not prejudice appellant where appellant was not entitled to benefits. It is equally without merit in its present manifestation due to the same lack of prejudice.
The fifth assignment of error is overruled.
The sixth, and final, assignment of error provides:
 VI THE TRIAL COURT ERRED IN AFFIRMING APPELLEE'S DENIAL OF MEDICAID ELIGIBILITY BECAUSE APPELLEE FAILED TO SUPPLY A STATE HEARING OFFICER WHO WAS AN ATTORNEY, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND OHIO LAW.
This same argument was presented, and rejected, in Albert v. Ohio Dept. of Human Services (May 11, 2000), Cuyahoga App. No. 76207, unreported, 2000 WL 573191, at 4.
The sixth assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________________ JAMES D. SWEENEY JUDGE
TIMOTHY E. McMONAGLE, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] Ohio Adm. Code 5101:1-39-07(B) provides:
 (B) A resource transfer is considered to be improper if the individual transferred his legal interest in a countable resource for less than fair market value for the purpose of qualifying for Medicaid, a greater amount of Medicaid, or to avoid the utilization of the resource.