[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action involves an appeal from a decision of the CT Page 15110 defendant Commissioner of Department of Social Services, State of Connecticut (DSS) denying the plaintiff's application for Title XIX Medicaid benefits because she exceeded the eligibility asset limit. This administrative appeal is brought pursuant to General Statutes § 4-183.
The following underlying facts are not in dispute. On July 25, 1995, the Court of Probate, District of Ellington appointed Virginia Gibson as temporary conservator of the estate of the plaintiff, Esther Hollister. The application for temporary conservator had been submitted by the Rockville General Hospital, Case Management Department. The application stated that "[p]atient needs continued care in a skilled nursing facility, requiring assistance to apply for Title XIX. Pt is unable to access necessary financial information for this process." (Return of Record (ROR), Volume I, p. 61.) On October 25, 1996, the plaintiff, through her conservator, applied for Medicaid. At the time of her application and during the eligibility period at issue, the plaintiff was a patient at Fox Hill Nursing and Rehabilitation Center (Fox Hill), a long-term care facility. (ROR, Volume II, p. 2.) The financial data submitted to DSS indicated that the plaintiff had bank accounts with assets in excess of $1,600 through July 31, 1997. (ROR, Volume I, pp. 10-30.)
On August 14, 1997, DSS denied Medicaid benefits to the plaintiff for the period July 1, 1996 through July 31, 1997 based on the existence of those bank accounts in excess of $1,600.
On April 16, 1997, the Court of Probate, District of Ellington, had appointed Attorney Timothy Johnston as conservator of the plaintiff's estate and person. (ROR, Volume I, p. 14.) On August 21, 1997, the plaintiff, through her conservator, Attorney Johnston, requested a Fair Hearing contesting the denial of Medicaid for this period. (ROR, Volume I, p. 63.) The plaintiff argued, inter alia, that the bank accounts were not accessible to the plaintiff and therefore the plaintiff did not have excess assets. On January 9, 1998, the Fair Hearing Officer, Rafael F. Garbalosa, issued a notice of decision upholding the DSS's denial of Medicaid assistance. This administrative appeal therefrom was timely filed. Oral argument was heard on November 24, 1998.
This court's "review of an administrative appeal is limited. Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes CT Page 15111 beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public UtilitiesControl, 219 Conn. 51, 57, 591 A.2d 1231 (1991); Woodbury WaterCo. v. Public Utilities Commission, 174 Conn. 258, 260,386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993);Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262,579 A.2d 505 (1990); Baerst v. State Board of Education,34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915,645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v.Commissioner of Social Services, 38 Conn. App. 522, 525-26, cert. denied, 235 Conn. 906 (1995).
A court "must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v. Freedom ofInformation Commission, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . New Haven v. Freedom of Information Commission,205 Conn. 767, 774, 535 A.2d 1297 (1988)." (Emphasis in original; internal quotation marks omitted.) Perkins v. Freedom ofInformation Commission, 228 Conn. 158, 164-65 (1993).
The Medicaid program is a "joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the cost of necessary medical care. . . ." (Citations omitted.) Burinskas v. Dept. of SocialServices, 240 Conn. 141, 148 (1997). Although a state's participation is voluntary, once it has elected to participate, it must "develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance." Id. Under General Statutes § 17b-260, the commissioner of social services is authorized to take advantage of the medical assistance program provided in Title XIX of the Social Security Act, codified as 42 U.S.C. § 1396 et seq., CT Page 15112 and under § 17b-2, the Department of Social Services administers the Medicaid program.
DSS has promulgated regulations as part of its uniform policy manual to administer the Medicaid program. General Statutes §17b-262. Under the pertinent provisions of the DSS's uniform policy manual, the asset limit for the Medicaid program is $1,600 for one, and eligibility is determined the first day of the month in which the applicant reduces her equity in counted assets to within the asset limit. Uniform Policy Manual (UPM) §§ 4005.10, 4005.15. The burden is on the applicant to demonstrate that an asset is inaccessible. UPM § 4015.50A. Additionally, the applicant must cooperate with DSS in attempting to gain access in order for the asset to be deemed "inaccessible." UPM § 4015.50B. The UPM also describes certain types of assets that are inaccessible to a Medicaid applicant. These assets include: 1) property in probate; . . . and 5) personal property which is no longer in the physical possession of the applicant if the person now possessing the asset refuses to return it to the applicant. UPM § 4015.50C.
In her appeal, the plaintiff advances four main arguments. First, the plaintiff argues that all of her assets were inaccessible for Medicaid eligibility purposes because a conservator of her estate had been appointed and, accordingly, her assets were "in probate." Second, the plaintiff argues that DSS should have applied a "resource spenddown." Third, the plaintiff argues that there was a "transfer" of her assets to her conservator and that she was eligible under an "undue hardship" exception under DSS's asset transfer regulations. Fourth, the plaintiff argues that she should be granted Medicaid eligibility as a matter of equity and fairness.
For purposes of her arguments, the plaintiff has divided the eligibility period in question into three time periods between July 1, 1996 and July 31, 1997. The first period runs from July 1, 1996 through November 30, 1996. During this time frame the plaintiff maintained two bank accounts, a Savings Bank of Rockville account (SBR) and a Connecticut State Employees Credit Union account (CSE). During this first time period, the balance in the SBR account increased from $4,105.37 to $6,461.70. (ROR, Volume I, pp. 21-25.) The balance in the CSE account was between $1,672.93 and $1,691.45. (ROR, Volume I, p. 14.) Also, during this first time period, the total assets in the SBR and CSE accounts increased from $5,778.30 to $8,153.15. (ROR, Volume I, CT Page 15113 p. 10.)
During the second time period, from December 1, 1996 through April 30, 1997, the balance in the plaintiff's SBR and CSE accounts decreased and ultimately, these accounts were closed in April and May of 1997, respectively. (ROR, Volume I, pp. 10-11.) The plaintiff maintained two additional accounts, however, one with Fleet Bank and a patient fund account at Fox Hill. During this second time period, the combined balances in these accounts varied from $183.73 to $312.64. (ROR, Volume I, pp. 10-11.)
During the third time period from May 1, 1997 through July 31, 1997, Attorney Timothy Johnston, who had been appointed conservator of the plaintiff's estate and person by the Probate Court on April 16, 1997, closed the SBR, CSE and Fleet accounts, and deposited the proceeds of these accounts into a new account with the Savings Bank of Manchester. In fact, Attorney Johnston reduced these assets on May 8, 1997. (ROR, Volume I, p. 35.) During this time frame, the patient fund at Fox Hill Nursing and Rehabilitation Center contained funds during the months of May, 1997 ($312.64); June, 1997 ($330.98); July, 1997 ($361.38); and August, 1997 ($391.38). (ROR, Volume I, p. 11.) Before the Hearing Officer, Attorney Johnston testified that he did not have the information on the patient account for months. (ROR, Volume II, p. 35.) Attorney Johnston's explanation concerning the patient account is incomplete and his testimony ends in mid-sentence. (ROR, Volume II, p. 35.)[1] Nonetheless, it is this rather small patient account which caused the plaintiff to be ineligible for Medicaid benefits because of assets in excess of $1,600 for this final time frame.
Addressing first the plaintiff's resource spenddown argument, the record is incomplete and inadequate for review. In Matarazzov. Rowe, 225 Conn. 314, 326-27 (1993), the Connecticut Supreme Court held that if the state's Medicaid plan in effect on January 1, 1972, provided for "resource spenddown," the state is required to continue to apply that methodology in its Medicaid eligibility determinations. The Court revisited and reconsidered the issue inRoss v. Giardi, 237 Conn. 550, 558 (1996) and "conclude[d] that, under its categorically needy program, the state is not required to provide medicaid benefits to individuals who would have been eligible under the 1972 plan unless those individuals satisfy the existing SSI [Supplemental Security Income for the aged, Blind and Disabled] eligibility criteria as applied by the federal government in its determination of SSI eligibility." (Footnote CT Page 15114 omitted.)
In the present case the hearing officer concluded:
 In Ross v. Giardi, 237 Conn. 550 (1996) the Court, overturning part of its decision in Matarazzo, held that the Department is not required to provide "resource spenddown". There is no provision in the regulations of the Department to provide resource spenddown. In light of the Ross decision and in absence of any regulatory requirement to do so, the Appellant cannot establish resource eligibility through resource spenddown.
(ROR, Vol. I, p. 4.)
In this administrative appeal, DSS, citing Giardi, contends that, despite the above finding by the hearing officer, in order to qualify for benefits under a resource spenddown, the plaintiff had to demonstrate that: 1) she was entitled to receive SSI benefits under current federal standards and 2) would have been entitled to receive Medicaid benefits under the state's January 1, 1972 state plan. (Defendant's Brief, p. 13.) DSS further contends that, again despite the hearing officer's finding, the plaintiff had an opportunity to present evidence concerning the applicability of spenddown and failed to demonstrate that she would have qualified for Medicaid under the 1972 state plan. (Defendant's Brief, pp. 13-14.)
The transcript of proceedings before the hearing officer contains the following concerning resource spenddown:
 Attorney Johnston. [Plaintiff's Conservator] — . . . I think that it has been decided that even though Esther is technically over resources, that we can employ a resource spend-down to go against you know her bills. She had bills. She had medical bills much higher than those resources and were it not for the negligence of the prior conservator, there would have been no funds in these accounts in July of 96 or in October when the application was filed or in April when I was appointed or in May when I finally consolidated the funds and wrote a check to Fox Hill Nursing and Rehab for $8,649.75 on May eighth, 1997. Even after that payment was made, the nursing home is still owed a considerable sum of about eighty thousand dollars. As of 5/6/96 through 7/31/97 the total bill is $88,197.59. CT Page 15115
 Attorney Lynch. [Intervener Fox Hill] — Unless that is the amount you are allowed a diversion.
Ms. Pisch. [For DSS] — Right, yes.
* * *
 Attorney Lynch. — I also would add for the record that I came prepared with a copy of the original Medicaid plan in Connecticut. This is the matarazzo argument but it is basically that I don't want to take too much of the hearing time for that but I am prepared to provide a copy to the hearing Officer. The argument is in administering the Medicaid program that there was a flexible resource spend-down at the time that Medicaid was adapted in Connecticut and that in strictly limiting her eligibility to being a dollar over $1,60[0].00 in assets when she has this huge outstanding medical bill for the time periods involved is taking a more restrictive requirement in administering the Medicaid program than was in existence prior to Medicaid being adapted in Connecticut and on that basis I am happy to provide the legal backup for that argument if I am sure you are aware of it, but if you would like me to submit that I am happy to submit a copy of the documentation supporting my argument there and Mr. Johnston's argument. I know he is prepared to do that also.
Mr. Garbalosa. [Hearing Officer] — Okay.
 Attorney Lynch. — I do have a copy of that Matarazzo decision and I think it is important to realize that if Connecticut utilized the Resource Spend-down Rule under the January first, 1972 plan section 209B requires the Department to grant retroactive-active benefits to the plaintiff in that case because of the Resource Spend-down and the same is true in this case and as I understand it, Connecticut utilized a resource spend-down.
 Mr. Garbalosa. — The information that you are thinking about submitting Mr. Lynch you are talking about a memorandum of law or just a copy of the case law.
 Attorney Lynch. — I would be happy to submit a copy of the case law and a copy of the original. Actually I have a CT Page 15116 copy. I can submit a copy of the cases, a copy of the original plan that was in effect in 1972 and also correspondence that I had with the Attorney General's Office to the Attorney involved in the Matarazo case that would substantiate the fact that there was a flexible resource spend-down at that time and the barrows case came after. It is a Hartford Superior Court case that came after the Matarazo case that interpreted that flexible spend-down rule and in fact granted benefits for someone with that was technically over assets for a period of time but had outstanding excess medical bills that exceeded the assets that were counted in disqualifying Mr. Barrows for Title 19. So to answer your question quickly copies of the case law, copies of the Medicaid plan that was in effect and copies of correspondence as I say from the parties involved in the case that seems to that does in fact back up the argument that I am making.
 Mr. Garbalosa. — Well since the arguments have been made I certainly would appreciate a copy of those documents that you have listed.
Attorney Lynch. — Very well.
(ROR, Vol. II, Administrative Hearing Transcript, pp. 19-20;29-31.)
Despite the foregoing representations of the attorneys that the various documents were being submitted and the hearing officer's concurrence, those documents are not a part of the record. Moreover, the transcript of proceedings before the hearing officer concludes with the following:
 Attorney Johnston. — I don't get information on the patient account until a couple of moths unfortunately and I am conservator for other people and am allowed a spend-down. Every time I do my applications for the next six months I am then told ***
 (***Hearing Officer's Note: The audio recording ends at this point, just prior to the hearing being concluded. However, the last words of Mr. Johnston's testimony were not recorded.)
(ROR, Vol. II, Administrative Hearing Transcript, p. 35.) CT Page 15117
Thus, this court is unable to determine the last statements of the plaintiff's conservator concerning the patient account and spenddown. Since the transcript ends in mid-sentence, this court also is unable to determine what happened to the proffered documents.
It is true, as DSS urges here, that the burden to establish Medicaid eligibility was upon the plaintiff. Harrison v.Commissioner, Department of Income Maintenance, 204 Conn. 672,679, 529 A.2d 188 (1987), citing Lavine v. Milne, 424 U.S. 577,583-84, 96 S.Ct. 1010, 47 L.Ed. 249 (1976). DSS concludes its argument with the following:
 While the Appellant may have been entitled to receive SSI benefits for at least a portion of the eligibility period at issue, the plaintiff did not establish that she would have been eligible under the terms of the 1972 plan. Thus, the plaintiff's resource spenddown argument must fail.
(Defendant's Brief, p. 14.)
This court disagrees in part. While the plaintiff may have been entitled to receive SSI benefits, the court is unable to determine whether or not the plaintiff established that she would have been eligible under the terms of the 1972 plan, based on the incomplete record of the proceedings before the hearing officer. Additionally, the hearing officer's conclusion that in light of the Ross decision, the plaintiff could not establish eligibility through resource spenddown is clearly erroneous.
Based on the foregoing, the plaintiff's administrative appeal is sustained. This matter is ordered remanded to DSS to review the plaintiff's eligibility for Medicaid under the requirements set forth in Ross v. Giardi, supra.
Michael Hartmere, J.