## ANDREA COSTELLO *v.* COMMISSIONER OF DEVELOPMENTAL SERVICES
### (AC 31843)

Robinson, Bear and Peters, Js.

Argued February 15—officially released April 26, 2011

*Lawrence W. Berliner*, with whom, on the brief, was *Marisa A. Mascolo*, for the appellant (plaintiff).

*Darren P. Cunningham*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, former attorney general, for the appellee (defendant).

*Opinion*

PETERS, J. This administrative appeal challenges the propriety of a departmental finding that the applicant's performance on intelligence tests demonstrates that the applicant is ineligible for the services provided by the department of developmental services pursuant to General Statutes §§ 1-1g[1] and 17a-210 et seq. After a review

[1] General Statutes § 1-1g provides: "(a) For the purposes of sections 4a-60, 17a-274, 17a-281, 38a-816, 45a-669 to 45a-684, inclusive, 46a-51, 53a-59a, 53a-60b, 53a-60c and 53a-61a, mental retardation means a significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period.

"(b) As used in subsection (a) of this section, 'general intellectual functioning' means the results obtained by assessment with one or more of the

of the administrative record, the trial court dismissed the plaintiff's appeal. We affirm the judgment of the trial court.

On September 3, 2008, the plaintiff, Andrea Costello, through her parents Barbara and William Costello, filed a complaint alleging that the defendant, the commissioner of developmental services, improperly had found that the plaintiff did not meet the statutory definition of "mental retardation" as codified in § 1-1g. After a review of the administrative record, the trial court dismissed the plaintiff's administrative appeal. The plaintiff has appealed to this court.

The comprehensive opinion of the trial court establishes the basic facts that govern this appeal. When the plaintiff was twelve years old, she filed a formal application, through her parents, to obtain access to the services provided by the department of developmental services (department). On August 8, 2007, after evaluating the plaintiff's records, the department's eligibility unit staff denied her application. Its report stated: "Testing, and a review of the records received, indicate that during the developmental period, [the plaintiff] did not meet the criteria of [§] 1-1g, and is not eligible for the services of the [department]. . . . [The plaintiff] clearly has moderate to severe mental health issues that are affecting her cognitive ability, yet it is still above what would be considered the mentally retarded range. Her primary presenting problems are neurological and mental health, not mental retardation."

individually administered general intelligence tests developed for that purpose and standardized on a significantly adequate population and administered by a person or persons formally trained in test administration; 'significantly subaverage' means an intelligence quotient more than two standard deviations below the mean for the test; 'adaptive behavior' means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected for the individual's age and cultural group; and 'developmental period' means the period of time between birth and the eighteenth birthday."

In accordance with the plaintiff's timely request pursuant to General Statutes §§ 4-176e through 4-183, the department held an administrative hearing on September 13, 2007. In support of her claim of eligibility, the plaintiff presented the testimony of her parents and two expert witnesses, Arlette Cassidy, a clinical psychologist, and Jeffrey Landau, a psychiatrist. The department presented the testimony of H. Steven Zuckerman, a supervising psychologist who also served as its representative at the administrative hearing.

In a proposed decision dated June 10, 2008, the department's hearing officer determined that the plaintiff was ineligible for the department's services. The hearing officer acknowledged that the plaintiff "did exhibit deficits in her adaptive behavior during the developmental period." She found, nonetheless, that the plaintiff did not meet the qualifications stated in § 1-1g. "[The plaintiff] did not have subaverage intellectual functioning during the developmental period. . . . [H]er intellectual functioning was above the subaverage in areas which disqualifies her from eligibility for services provided by the [department] . . . ."

The plaintiff then filed a further timely appeal to the defendant. The defendant concurred in the decision of the hearing officer, found that the plaintiff was not eligible for the department's services and advised her of her right to appeal to the Superior Court.

The plaintiff then appealed to the trial court, which, after a hearing, dismissed her administrative appeal. The court was not persuaded either by her evidentiary challenge to the sufficiency of the evidence in support of the defendant's decision or by her constitutional challenge to the procedural propriety of the defendant's decision.

The plaintiff now has appealed to this court for further review of the issues that she has unsuccessfully

pursued administratively and in the trial court. Substantively, she again claims that the decision of the defendant ignored substantial evidence in the record, was not supported by the evidence in the record and was arbitrary, capricious and illegal. Procedurally, she again alleges that the procedures utilized by the defendant were arbitrary and capricious and denied her the right to due process of law, as guaranteed by the United States and Connecticut constitutions, and to equal protection of the law, as guaranteed by the Connecticut constitution. We affirm the judgment of the trial court.

I

The plaintiff contests the sufficiency of the administrative evidence on which the defendant relied in finding her ineligible for the department's services. "According to our well established standards, [r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Internal quotation marks omitted.) *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 603, 893 A.2d 431 (2006).

Before we address the plaintiff's criticism of the administrative determinations in this case, it is useful to observe what is *not* at issue in this case. The plaintiff does not challenge the well established principle that

it was her burden to demonstrate that she met the requirements for eligibility for the department's services. See *Matarazzo* v. *Rowe*, 225 Conn. 314, 323, 623 A.2d 470 (1993), overruled in part on other grounds by *Ross* v. *Giardi*, 237 Conn. 550, 571, 680 A.2d 113 (1996). The plaintiff does not challenge the professional credentials of the witness on whose testimony the defendant based the determination that she had failed to do so. She does not contest the defendant's decision to base eligibility for the department's services on test scores rather than on a personal evaluation of an applicant's cognitive skills. She does not claim that the tests were administered improperly. Finally, she does not assert that she was deprived of the opportunity to present evidence in support of her eligibility for the department's services.

A review of the record at the administrative hearing to determine the plaintiff's eligibility makes it plain that the principal disagreement between the parties was the proper interpretation of the plaintiff's scores on a number of intelligence tests. It is undisputed that, as mental retardation is defined in § 1-1g, an applicant is eligible for the department's services only if her intelligence quotient (IQ) scores are lower than seventy. See *Christopher R.* v. *Commissioner of Mental Retardation*, supra, 277 Conn. 597–98.

The plaintiff's expert witnesses were Cassidy, a clinical psychologist at the Gengras Center in West Hartford, where the plaintiff goes to school, and Landau, a psychiatrist with whom the plaintiff was in treatment for her psychological problems.[2] Both testified that the plaintiff's full scale IQ score of sixty-six on the 2007 Weschler Intelligence Scale for Children—Fourth Edition (WISC-IV) demonstrated that the plaintiff was mentally retarded as that term is defined in § 1-1g.

---

[2] In addition, the plaintiff's parents described the plaintiff's behavioral and intellectual difficulties.

The defendant's expert witness, Zuckerman, a psychologist, testified to the contrary. In his view, because of significant internal discrepancies in the plaintiff's performance on the component parts of the WISC-IV test,[3] the general intelligence full scale IQ score was *not* an accurate measurement of the plaintiff's intelligence. He opined that the plaintiff's General Ability Index of seventy-three and her score of eighty-six on the Peabody Picture Vocabulary Test more accurately portrayed her intellectual ability. Because these test scores exceeded the benchmark of seventy, in his opinion the plaintiff did not qualify for the department's services.

The hearing officer agreed with Zuckerman's evaluation of the evidence of record. That decision was affirmed by the defendant, and, subsequently, the trial court dismissed the plaintiff's administrative appeal.

The plaintiff maintains nonetheless that there was no *substantial* evidence of record to refute the testimony of her experts that her score on the WISC-IV test demonstrated her eligibility for the department's services. Our resolution of this claim is governed by *Christopher R.* v. *Commissioner of Mental Retardation,* supra, 277 Conn. 594, in which our Supreme Court recently reviewed the factors that govern an application for access to the services provided by the department.

In *Christopher R.* the Supreme Court held that (1) the legislature has delegated to the defendant a gatekeeping function to determine eligibility for the department's services; id., 616; (2) the fact that an applicant has needs that could be served by the department is not sufficient to establish his or her right to obtain

---

[3] The plaintiff received a score of eight-five on the verbal comprehension standard, a score of sixty-five on the perceptual reasoning standard, a score of fifty-nine on the working memory standard and a score of seventy-five on the processing speed standard.

services; id.; (3) evidence of an adaptive *behavior* deficit does not establish eligibility for the department's services unless it is accompanied by the required statutory subaverage general *intellectual ability*; id., 599; and (4) in assessing intellectual ability, the defendant may rely on various intelligence tests, in whole or in part. Id., 607.

Furthermore, the Supreme Court specifically addressed as a "threshold issue" the question whether, "consistent with § 1-1g, the defendant may consider more than one general intelligence test to determine whether an applicant is mentally retarded and, therefore, is eligible for the department's services." Id., 606. The court concluded that, when the record contained conflicting results in *tests and subtests*, the defendant had the authority to consider evidence other than the general intelligence full scale IQ test score. Id., 609. That holding governs this appeal. As in *Christopher R.*, the defendant in this case was presented with a record that documented a number of intelligence tests and internal inconsistencies between and within them. As in *Christopher R.*, Zuckerman presented reasoned testimony, supported by an unchallenged scholarly treatise, that, in his professional opinion, established that the plaintiff's full scale IQ test score was not a reliable measure of her intellectual ability.

We recognize that, in *Christopher R.*, additional expert testimony supported Zuckerman's testimony, and that, in the present case, the plaintiff offered contrary expert testimony. We are not persuaded that these differences deprive *Christopher R.* of its authoritative force.

In sum, we agree with the trial court that, according to the tests submitted to the defendant in this case, the record establishes sufficient evidence to support the defendant's administrative determination that the plaintiff presently is ineligible for the department's services.

Accordingly, the defendant's adverse finding was neither arbitrary nor unreasonable.

It bears emphasis that the defendant's decision, and our affirmance of that decision, does not bar the plaintiff from reapplying for the department's services in the future if, as her expert witnesses predict, a future intelligence test establishes further cognitive impairment.[4] Pursuant to § 1-1g (b), she remains eligible for the department's services until she becomes eighteen.

## II

In the alternative, the plaintiff asserts that she is entitled to a reversal of the defendant's adverse administrative decision because he violated her constitutional right to due process by failing to give her appropriate notice of the claims against her. This contention is based on the request of the hearing officer, at the hearing to consider her eligibility for the department's services, that the plaintiff submit psychiatric records from her hospitalization at Riverview Hospital. Concededly, the plaintiff had not been advised, in advance of the hearing, that she needed to present psychiatric or medical information in support of her eligibility claim.

The trial court rejected the plaintiff's claim without addressing its merits. The court concluded that, even if the hearing officer's request was improper, the error was harmless because the defendant's ruling on the merits of the plaintiff's application for the department's services was supported by substantial evidence.

Although we agree with the court's harmless error analysis, we are persuaded that that the record establishes an additional basis for rejection of the plaintiff's constitutional claim. The plaintiff has not called to our

---

[4] Although the plaintiff alludes in her brief to a later evaluation, she has not contested the defendant's representation, in footnote 5 of his brief, that the trial court denied the plaintiff's motion to supplement the record in this case. Because this evaluation was not, in fact, made part of this record, we cannot consider it.

attention any aspect of the administrative proceedings *antecedent* to the eligibility hearing that would have alerted the hearing officer to the need to make a timely request for access to the plaintiff's psychiatric records. At the hearing, however, the *plaintiff's* counsel elicited testimony from the plaintiff's parents in which they described the cognitive and psychological issues with which the plaintiff was struggling and the role that hospitalization at Riverview Hospital had played in helping her to deal with these issues. In light of this testimony, the hearing officer asked the witnesses to clarify the plaintiff's psychiatric history. Zuckerman objected to such testimony because the department had not been alerted to the existence of relevant psychiatric information. When the hearing officer then ordered release of the plaintiff's psychiatric records, the plaintiff objected. In light of the fact that the plaintiff's own witnesses opened the door to an inquiry into her psychiatric history, we can find no basis for her present assertion that the hearing officer's order violated her constitutional right to due process.

In conclusion, we are persuaded that the defendant's rejection of the plaintiff's application for the department's services is supported by the administrative record. The record makes it clear, as the hearing officer found, that the plaintiff has demonstrated deficits in her adaptive behavior and that she needs special education accommodations. Nonetheless, the record furnishes a reasonable factual basis for the administrative finding that the plaintiff did not qualify for the *department's* services because her test scores on several intelligence tests did not establish subaverage general intellectual ability and therefore did not satisfy the eligibility requirement contained in § 1-1g. The record likewise establishes that the plaintiff was not deprived of her constitutional rights.

The judgment is affirmed.

In this opinion the other judges concurred.